## IN THE CIRCUIT COURT IN AND FOR
## ESCAMBIA COUNTY, FLORIDA

|  |  |
|---|---|
| DEMETRIUS GIBSON and TAMMY GIBSON, | ) ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) |
| ANDREA MINYARD; GULF COAST AUTOPSY PHYSICIANS, P.A.; TIMOTHY J. GALLAGHER; CORPORAL THOMAS PASCHAL; TROOPER CHAD LYNCH; SERGEANT RANDLE PADGETT; FAITH CHAPEL FUNERAL SERVICES, LLC; and TRACY MORTON MEMORIAL CHAPEL, LLC, | ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

Case No: 2020 CA 000344

JURY DEMAND

## FIRST AMENDED COMPLAINT

Plaintiffs, Demetrius and Tammy Gibson (hereinafter referred to as "Plaintiffs"), by and through undersigned counsel, upon information and belief, allege as follows:

### JURISDICTION AND VENUE

1.  This is an action for damages in excess of the minimum jurisdictional limits of this Court.

2.      Defendants and/or their agents performed the acts and/or omissions that make the basis of this action between July 29, 2019 and August 2, 2019, in Escambia County, Florida.

3.      Part of this action arises under and is brought pursuant to 42 U.S.C. § 1983 to remedy the deprivation, under color of state law, of rights guaranteed by the Fourteenth Amendment to the United States Constitution and Article 1, §2 & 9 of the Constitution of the State of Florida. The Court has concurrent jurisdiction with federal courts to enforce a § 1983 action. See Lloyd v. Page, 474 So. 2d 865 (Dist. Ct. App. Fla. 1985).

4.      This cause of action arose in Escambia County, Florida. Therefore, venue is proper under Fla. Stat. § 47.011.

## **THE PARTIES**

5.      Plaintiff Demetrius Gibson is an adult citizen and resident of Cantonment, Florida, located in Escambia County, Florida, and is the father of Deleigha Gibson.

6.      Plaintiff Tammy Gibson is an adult citizen and resident of Cantonment, Florida, located in Escambia County, Florida, and is the mother of Deleigha Gibson.

7.      Defendant Andrea Minyard (hereinafter referred to as "Defendant Minyard") was at all times relevant to this suit the Coroner of Escambia County,

Florida, and on information and belief, was at all times material to this action an adult citizen and resident of Escambia County, Florida, and responsible for the conduct of the employees and agents of the District One Office of the Medical Examiner for operation in Escambia, Santa Rosa, Okaloosa, and Walton Counties, for establishing customs, policies, and procedures to regulate the conduct of agents and employees of the District One Office of the Medical Examiner, and for ensuring that employees and agents of the District One Office of the Medical Examiner obeyed the laws of the State of Florida and the United States.

8.     Defendant Gulf Coast Autopsy Physicians, P.A. (hereinafter referred to as "Defendant Gulf Coast Autopsy"), is a domestic corporation, organized under the laws of the State of Florida, with its principal place of business at the time of this lawsuit in Pensacola, Escambia County, Florida, and with its current principal place of business in Naples, Collier County, Florida. Upon information and belief, Defendant Gulf Coast Autopsy operated the District One Medical Examiner's Office that encompasses Escambia County and was under the sole auspices, control, and responsibility of Defendant Minyard.

9.     Defendant Timothy J. Gallagher (hereinafter referred to as "Defendant Gallagher) was at all times relevant to this suit the Associate Medical Examiner for the District One Office of the Medical Examiner, and on information and belief,

was at all times material to this action an adult citizen and resident of Santa Rosa

County, Florida.

10.    Defendant Corporal Thomas Paschal (hereinafter referred to as

"Defendant Paschal"), upon information and belief, was at all times relevant to this

suit the lead Traffic Homicide Investigator for Case No. FHP-719-09-031,

involving the crash that killed Deleigha Gibson, for the Florida Highway Patrol in

Escambia County, and on information and belief, was at all times material to this

action an adult citizen and resident of Okaloosa County, Florida, and responsible

for the conduct throughout this investigation of the employees and agents of the

Florida Highway Patrol in Escambia County, for enforcing and following customs,

policies, and procedures that regulate the conduct of agents and employees of the

Florida Highway Patrol in Escambia County, and for ensuring that employees and

agents of the Florida Highway Patrol in Escambia County obeyed the laws of the

State of Florida and the United States.

11.    Defendant Trooper Chad Lynch (hereinafter referred to as "Defendant

Lynch"), upon information and belief, was at all times relevant to this suit the

Florida Trooper involved in the on-scene traffic homicide investigation for Case

No. FHP-719-09-031, involving the crash that killed Deleigha Gibson, for the

Florida Highway Patrol in Escambia County, and on information and belief, was at

all times material to this action an adult citizen and resident of Escambia County,

4

Florida, and responsible for following the customs, policies, and procedures that regulate the conduct of agents and employees of the Florida Highway Patrol in Escambia County and for obeying the laws of the State of Florida and the United States.

12.    Defendant Sergeant Randle Padgett (hereinafter referred to as "Defendant Padgett"), upon information and belief, was at all times relevant to this suit the Traffic Homicide Investigator Sergeant for Case No. FHP-719-09-031, involving the crash that killed Deleigha Gibson, for the Florida Highway Patrol in Escambia County, and on information and belief, was at all times material to this action an adult citizen and resident of Santa Rosa County, Florida, and responsible for the conduct throughout this investigation of the employees and agents of the Florida Highway Patrol in Escambia County, for enforcing and following customs, policies, and procedures that regulate the conduct of agents and employees of the Florida Highway Patrol in Escambia County, for approving the investigation, and for ensuring that employees and agents of the Florida Highway Patrol in Escambia County obeyed the laws of the State of Florida and the United States.

13.    Upon information and belief, Tracy Morton Memorial Chapel, LLC (hereinafter referred to as "Defendant Tracy Morton") is a limited liability company organized under the laws of Florida with its principal place of business in the state of Florida. Upon information and belief, Defendant Tracy Morton is a

company providing funeral services and operating a funeral home in Florida. Tracy Morton was a member and/or operator of Tracy Morton Memorial Chapel, LLC, at the time when agents and/or employees of Tracy Morton Memorial Chapel, LLC, breached its contract with the Plaintiffs and interfered with Deleigha Gibson's body and her family's right to the preservation and respect of her body.

14.     Upon information and belief, Faith Chapel Funeral Services, LLC (hereinafter referred to as "Defendant Faith Chapel") is a limited liability company organized under the laws of Florida with its principal place of business in the state of Florida. Upon information and belief, Defendant Faith Chapel is a company providing funeral services and operating a funeral home in Florida. Michael S. Atwood and Teresa K. Atwood were members and/or operators of Faith Chapel Funeral Services, LLC, at the time when agents and/or employees of Faith Chapel Funeral Services, LLC, embalmed without authorization, mishandled, and interfered with Deleigha Gibson's body and her family's right to the preservation and respect of her body.

## STATEMENT OF FACTS

15.     On or about July 29, 2019, the Plaintiffs' daughter, Deleigha Gibson, passed away as a result of a motor vehicle crash in unincorporated Escambia County, Florida.

16.     On or about July 29, 2019, another victim, Samara Cooks, passed away as a result of the same motor vehicle crash in unincorporated Escambia County, Florida.

17.     Deleigha Gibson and Samara Cooks were different ages and had different heights, weights, and physical appearances.

18.     At the scene of the crash, Deleigha Gibson and Samara Cooks were recognizable.

19.     Upon information and belief, when the Florida Highway Patrol arrived at the scene of the crash, the investigating officers found Deleigha Gibson's picture identification.

20.     Upon information and belief, Defendant Lynch printed several reports including pictures from the Driver and Vehicle Information Database (hereinafter referred to as "DAVID reports"). One of these DAVID reports identified Deleigha Gibson and another identified an individual who was not involved in the crash—to preserve her identity we will refer to this DAVID report as that of "Jane Smith".

21.     Upon information and belief, a corporal with the Florida Highway Patrol wanted to measure the crash site and yelled at Defendant Lynch and the body removal service to hurry up with identification and get out of the way.

22.     It is disputed whether any of the members of the Florida Highway Patrol instructed either Trooper Lynch or the body removal service to identify the bodies as "unknown".

23.     Upon information and belief, there had been some discussion among Defendant Lynch and other members of the Florida Highway Patrol questioning the identities of the two victims of the crash.

24.     Upon information and belief, Defendant Lynch handed Deleigha Gibson's DAVID report to the body removal service as identification for Samara Cooks and handed the body removal service the DAVID report of "Jane Smith" as identification for Deleigha Gibson.

25.     Upon information and belief, at the scene of the crash, within the view of the members of the Florida Highway Patrol and based on their instruction, Deleigha Gibson's body was tagged and marked as "Jane Smith" and Samara Cooks' body was tagged and marked as Deleigha Gibson.

26.     To this day, the information on the Florida Traffic Crash Report is incorrect. For example, the Plaintiffs were told that their daughter had been thrown a significant distance from the crashed vehicle which caused Plaintiffs extreme stress and anxiety. In actuality, Samara Cooks was the individual ejected from the vehicle. Despite Defendant Paschal's and Defendant Padgett's knowledge of this error in the Traffic Crash Report, and even after an update

was made to note a traffic citation, the Traffic Crash Report still incorrectly identifies Deleigha Gibson as the individual ejected from the vehicle.

27.     Upon information and belief, Defendant Gulf Coast Autopsy obtained control of both victims' bodies, but did not properly identify the bodies. Therefore, the body of Deleigha Gibson remained tagged "Jane Smith" and Samara Cooks remained tagged as Deleigha Gibson throughout the autopsies.

28.     Upon information and belief, Defendant Minyard was responsible for the conduct of the employees and agents of Defendant Gulf Coast Autopsy as well as employees and agents of the District One Office of the Medical Examiner, for establishing customs, policies, and procedures to regulate the conduct of agents and employees of Defendant Gulf Coast Autopsy as well as employees and agents of the District One Office of the Medical Examiner, and for ensuring that employees and agents of Defendant Gulf Coast Autopsy as well as employees and agents of the District One Office of the Medical Examiner obeyed the laws of the State of Florida and the United States. Upon information and belief, Defendant Minyard had inadequate policies and procedures regarding the identification of bodies and/or did not enforce appropriate policies and procedures regarding the identification of bodies.

29.     Upon information and belief, Defendant Padgett and Defendant Paschal were responsible for the conduct of the employees and agents of Florida Highway Patrol, for enforcing customs, policies, and procedures to regulate the conduct of agents and employees of the Florida Highway Patrol, and for ensuring that employees and agents of the Florida Highway Patrol obeyed the laws of the State of Florida and the United States. Upon information and belief, Defendant Padgett and Defendant Paschal had inadequate policies and procedures regarding the identification of bodies and/or did not enforce appropriate policies and procedures regarding the identification of bodies.

30.     Upon information and belief, when Plaintiff Tammy Gibson arrived at the office of the District One Office of the Medical Examiner, employees and/or agents of Defendant Gulf Coast Autopsy and/or employees and agents of the District One Office of the Medical Examiner refused to allow Plaintiff Tammy Gibson to view her daughter's body, claiming it was office policy.

31.     Upon information and belief, Defendant Gallagher performed the autopsies of Deleigha Gibson and Samara Cooks without properly identifying their bodies. Even after Defendant Gallagher and employees and/or agents of Defendant Gulf Coast Autopsy were informed that there was no "Jane Smith" involved in the collision and that Samara Cooks was in their possession,

they simply crossed out the name of "Jane Smith" and marked the body as Samara Cooks, without taking any action whatsoever to properly identify the body. In fact, the body originally marked as "Jane Smith" and secondarily marked as Samara Cooks was actually Deleigha Gibson.

32.     Upon information and belief, Defendant Gulf Coast Autopsy, Defendant Minyard, and Defendant Gallagher did not properly preserve the body of Deliegha Gibson who wished to be an organ donor in the event of her untimely death.

33.     Upon information and belief, had Defendant Gulf Coast Autopsy, Defendant Minyard, and Defendant Gallagher properly preserved Deleigha Gibson's body, she potentially could have donated organs that could have saved someone else's life.

34.     Upon information and belief, Defendant Minyard, Defendant Gallagher, Defendant Gulf Coast Autopsy, Defendant Paschal, and Defendant Padgett did not enact, follow, or enforce the requisite policies and procedures related to identifying bodies or act in line with their duty to identify the bodies of Deleigha Gibson and Samara Cooks.

35.     Upon information and belief, since the bodies were still switched at the Medical Examiner's Office and during the autopsies, Plaintiffs cannot be certain that the information on their daughter's death certificate or in

her autopsy report are actually for their daughter or possible relate to Samara Cooks.

36.     The Plaintiffs released Deleigha Gibson's body to Defendant Tracy Morton.

37.     Upon information and belief, Defendant Gulf Coast Autopsy, Defendant Minyard, and Defendant Gallagher released Deleigha Gibson's body to Defendant Faith Chapel which was neither authorized to receive Deleigha Gibson's body nor was it authorized to prepare or embalm her body.

38.     On or about July 30, 2019, the Plaintiffs entered a contract with Defendant Tracy Morton for the embalmment, visitation, and funeral services of their daughter (hereinafter referred to as the "Contract").

39.     The Plaintiffs did not release Deleigha Gibson's body to Defendant Faith Chapel and did not authorize Defendant Faith Chapel to embalm Deliegha Gibson.

40.     Upon information and belief, Defendant Faith Chapel obtained the body of Deleigha Gibson that was incorrectly tagged as Samara Cooks and, without authorization, embalmed and prepared Deleigh Gibson's body in a way that was not satisfactory to the Plaintiffs.

41.      Upon information and belief, when Plaintiff Tammy Gibson asked to see the body of her daughter, Defendant Tracy Morton would not allow Plaintiff Tammy Gibson to view the body of her deceased daughter.

42.      Upon information and belief, Defendant Tracy Morton had an 8x10 photo of Deleigha Gibson but failed to realize that it had the incorrect body in its possession.

43.      Defendant Tracy Morton requested that Plaintiffs obtain clothing one size up from Deleigha Gibson's usual clothes due to swelling from being embalmed. Once Plaintiffs brought clothes a size up, Defendant Tracy Morton informed them that she needed even larger clothes because they would not fit Deleigha Gibson (in actuality, she was dressing the body of Samara Cooks).

44.      Upon information and belief, once Defendant Tracy Morton, Defendant Faith Chapel, Defendant Padgett, and Defendant Paschal realized that the bodies had been switched, they attempted to switch the bodies without Plaintiffs notification or knowledge.

45.      Plaintiffs overheard a witness state that the bodies had been switched and Defendant Tracy Morton ultimately let Plaintiff Tammy Gibson view the body in its possession, the body of Samara Cooks.

46.     Even after Defendant Tracy Morton obtained the correct body, it performed the preparation in a rushed manner and did not prepare the body in a way that was satisfactory to Plaintiffs.

47.     After enduring the wrongs at the hands of Defendants, the Plaintiffs suffered nightmares, loss of appetite, anxiety, stress, loss of sleep, and extreme emotional trauma.

## FIRST CAUSE OF ACTION

### 42 U.S.C. § 1983 Action against Defendant Andrea Minyard

48.     Plaintiffs re-allege and incorporate by reference each previously stated paragraph 1-47 as if fully set forth herein.

49.     Defendant Minyard, while acting under color of State law and by virtue of the authority vested in her by the State of Florida, and its agencies, demonstrated deliberate, willful, and/or wanton indifference to the property right, quasi-property right, or legitimate claim of entitlement of Plaintiffs to access the body of their deceased daughter, Deleigha Gibson, for purposes of lawful disposition in violation of Plaintiffs' constitutional rights as secured by the Fourteenth Amendment to the United States Constitution and Article 1, §2 & 9 of the Constitution of the State of Florida.

50.     Defendant Minyard and the office under her control participated in the identification, tagging, autopsy, marking, handling, release, and

movement of the body of Deleigha Gibson. Her participation included the
crafting and enforcement of the policies and procedures surrounding
identifying, tagging, performing autopsies, marking, releasing, and moving
bodies in the custody and control of the District One Office of the Medical
Examiner.

51.     Defendant Minyard was on notice that Deleigha Gibson and
Samara Cooks's bodies were potentially improperly identified because the body
removal service notated that the bodies were only "believed to be", abbreviated
"BTB," Deleigha Gibson and "Jane Smith." While both bodies were in the
possession of Defendant Minyard, a caller notified the medical examiner's
office that the identification of one of the decedents as "Jane Smith" was
incorrect as a "Jane Smith" was not involved in the collision at all. In fact, this
third party caller was the person who notified Defendant Minyard that they had
Samara Cooks' body in their possession. Upon information and belief,
Defendant Minyard did nothing to verify the identities of the bodies, merely
crossing out the name "Jane Smith" and changing it to "Samara Cooks."

52.     Defendant Minyard was on notice that Deleigha Gibson and
Samara Cooks's bodies were improperly identified because they had a
photograph of Deleigha that clearly did not resemble the body identified as
Deleigha (the body of Samara Cooks) and they had a photograph of "Jane

Smith" who clearly did not resemble the body identified as "Jane Smith" (the body of Deleigha Gibson).

53.     Upon information and belief, because the identities were incorrect, Defendant Minyard did not properly preserve Deleigha Gibson's body to ensure her organs could be harvested for donation—a wish she expressed on her driver's license identification in the possession of these Defendants.

54.     Despite notice that the identities were incorrect, Defendant Minyard proceeded with autopsy procedures and preparation of the misidentified bodies, ultimately sending them to the wrong funeral homes.

55.     Defendant Minyard failed to communicate or work with the Florida Highway Patrol to ensure proper identification of the bodies and failed to provide the Florida Highway Patrol with fingerprint cards that may have confirmed the victims' identities.

56.     Defendant Minyard failed to use Deleigha Gibson's cross tattoo or belly button piercing to properly identify her body.

57.     Although Plaintiff Tammy Gibson asked to view her daughter's body, Defendant Minyard prevented Deleigha's mother from identifying Deleigha's body in person or by photograph. In fact, Defendant Minyard did not even attempt to reach out to Deleigha' parents to verify unique

markings and piercings on Deleigha's body—markings that would have ensured proper identification.

58.     Upon information and belief, Defendant Minyard had inadequate procedures in place for properly identifying bodies and/or did not follow adequate policies to ensure proper identification and verification.

59.     Plaintiff Tammy Gibson signed the Consent for Body Release, allowing the District One Medical Examiner to release the body of Deleigha Gibson to Tracy Morton Memorial Chapel.

60.     Defendant Minyard, without consent, released the body of Deleigha Gibson to Faith Chapel Funeral Home.

61.     Defendant Minyard prevented Plaintiffs from laying their daughter to rest according to their wishes by misidentifying the bodies of Deliegha Gibson and Samara Cooks, incorrectly notating their Death Certificates, giving incorrect information to the families of the deceased girls, releasing the wrong bodies to the funeral home chosen by each family (ensuring they would be embalmed by an unauthorized funeral home), all despite possessing picture identification for Deleigha Gibson and despite the disparate age, height, weight, and appearance of the two victims of the crash on July 29, 2019, and demonstrated deliberate, willful, and/or wanton indifference to the property right, quasi-property right, or legitimate claim of entitlement of

Plaintiffs to access the body of their deceased daughter, Deleigha Gibson, for purposes of lawful disposition in violation of Plaintiffs' constitutional rights as secured by the Fourteenth Amendment to the United States Constitution and Article 1, §2 & 9 of the Constitution of the State of Florida.

62.     Defendant Minyard failed in on or more of the following ways:

a.     failed to accurately identify the body of Deleigha Gibson as such;

b.     failed to conduct any investigation into the identities of the two young women despite notation by body removal that the bodies were only "believed to be" Deleigha Gibson and "Jane Smith," despite the fact that she learned that her office did not have the body of "Jane Smith" but rather the body of Samara Cooks, and despite the DAVID report including a photo of Deleigha Gibson, who looked nothing like Samara Cooks, who was tagged as Deleigha;

c.     enacted policies which prevented the Plaintiffs from viewing the body of Deleigha Gibson, an action that, had it been allowed, would have ensured accurate identification of Deleigha Gibson's body;

d.     failed to use Deleigha's unique markings or piercings—a cross tattoo on her wrist and a belly button piercing—to properly identify her body or verify her identity with Plaintiffs;

e.  failed to ensure proper preservation of the body of Deleigha Gibson whose identification stated that she wished to be an organ donor;

f.  failed to properly tag or label or identify the body of Deleigha Gibson;

g.  released the body of Deleigha Gibson to Faith Chapel Funeral Home without authorization;

h.  proceeded or allowed Defendant Gallagher to proceed with autopsies on the wrong bodies;

i.  failed to take precautions to ensure proper identification of the body of Deleigha Gibson, treatment of the body in line with her direction to be an organ donor, and treatment of her body with dignity and respect, as required by Fla. Stat. § 497.386(4), and protection of Plaintiffs constitutionally protected rights in the body of their deceased daughter;

j.  failed to comply with their mission statement to "[t]reat bereaved families with respect, sensitivity and consideration" or to "[p]rovide families and loved ones of decedents with timely reports and explanations";

k.  failed to establish and/or implement policies and procedures to ensure proper identification of the deceased;

l.   failed to establish and/or implement policies and procedures to ensure protection of surviving family members' rights with regard to the bodies of their deceased family member;

m.   failed to communicate with any member of the Florida Highway Patrol to ensure proper identification;

n.   failed to provide Florida Highway Patrol with the fingerprint cards of the deceased so that the fingerprints could be forwarded to the appropriate agency for identification purposes;

o.   failed to accurately document Deleigha Gibson's autopsy report and/or Death Certificate; and,

p.   failed to establish and/or implement quality control measures.

63.   As a direct and proximate result of the actions or failures to act on the part of Defendant Minyard, Plaintiffs were prevented from access to the body of their daughter for burial in the manner they desired or embalmment by the professional chosen causing Plaintiffs to experience unimaginable emotional pain and suffering, mental anguish, discomfort, deterioration, loss of the ability to enjoy life, and have suffered other reasonably foreseeable compensatory damages.

64.   Plaintiffs have retained the undersigned as counsel in pursuit of the protection of their constitutional rights.

WHEREFORE, Plaintiffs pray for the entry of judgment against Defendant Minyard, jointly and severally with other Defendants to this action, for compensatory damages (past and future) in an amount as proved at trial; for an award of punitive damages; for costs, expenses, and attorney's fees for this action in accordance with 42 U.S.C. §1988; for a trial by jury; and for such other and further relief as the court deems just and proper.

## SECOND CAUSE OF ACTION

### 42 U.S.C. § 1983 Action against Defendant Timothy Gallagher

65.     Plaintiffs re-allege and incorporate by reference each previously stated paragraph 1-47 as if fully set forth herein.

66.     Defendant Gallagher, while acting under color of State law and by virtue of the authority vested in him by the State of Florida, and its agencies, demonstrated deliberate, willful, and/or wanton indifference to the property right, quasi-property right, or legitimate claim of entitlement of Plaintiffs to access the body of their deceased daughter, Deleigha Gibson, for purposes of lawful disposition in violation of Plaintiffs' constitutional rights as secured by the Fourteenth Amendment to the United States Constitution and Article 1, §2 & 9 of the Constitution of the State of Florida.

67.     Defendant Gallagher participated in the identification, tagging, autopsy, marking, handling, release, and movement of the body of Deleigha Gibson.

68.     Defendant Gallagher was on notice that Deleigha Gibson and Samara Cooks's bodies were potentially improperly identified because the body removal service notated that the bodies were only "believed to be", abbreviated "BTB," Deleigha Gibson and "Jane Smith." While both bodies were in the possession of Defendant Gallagher, a caller notified the medical examiner's office that the identification of one of the decedents as "Jane Smith" was incorrect as a "Jane Smith" was not involved in the collision at all. In fact, this third party caller was the person who notified Defendant Gallagher that they had Samara Cooks' body in their possession. Upon information and belief, Defendant Gallagher did nothing to verify the identities of the bodies, merely crossing out the name "Jane Smith" and changing it to "Samara Cooks."

69.     Defendant Gallagher was on notice that Deleigha Gibson and Samara Cooks's bodies were improperly identified because they had a photograph of Deleigha that clearly did not resemble the body identified as Deleigha (the body of Samara Cooks) and they had a photograph of "Jane Smith" who clearly did not resemble the body identified as "Jane Smith" (the body of Deleigha Gibson).

70.     Upon information and belief, because the identities were incorrect, Defendant Gallagher did not properly preserve Deleigha Gibson's body to ensure her organs could be harvested for donation—a wish she expressed on her driver's license identification in the possession of these Defendants.

71.     Despite notice that the identities were incorrect, Defendant Gallagher proceeded with autopsies and preparation of the misidentified bodies, ultimately sending them to the wrong funeral homes.

72.     Defendant Gallagher failed to communicate or work with the Florida Highway Patrol to ensure proper identification of the bodies and failed to provide the Florida Highway Patrol with fingerprint cards that may have confirmed the victims' identities.

73.     Defendant Gallagher failed to use Deleigha Gibson's cross tattoo or belly button piercing to properly identify her body.

74.     Although Plaintiff Tammy Gibson asked to view her daughter's body, Defendant Gallagher prevented Deleigha's mother from identifying Deleigha's body in person or by photograph. In fact, Defendant Gallagher did not even attempt to reach out to Deleigha' parents to verify unique markings and piercings on Deleigha's body—markings that would have ensured proper identification.

75.     Plaintiff Tammy Gibson signed the Consent for Body Release, allowing the District One Medical Examiner to release the body of Deleigha Gibson to Tracy Morton Memorial Chapel.

76.     Defendant Gallagher, without consent, released the body of Deleigha Gibson to Faith Chapel Funeral Home.

77.     Defendant Gallagher prevented Plaintiffs from laying their daughter to rest according to their wishes by misidentifying the bodies of Deleigha Gibson and Samara Cooks, incorrectly noting their Death Certificates, giving incorrect information to the families of the deceased girls, releasing the wrong bodies to the funeral home chosen by each family, all despite possessing picture identification for Deleigha Gibson and despite the disparate age, height, weight, and appearance of the two victims of the crash on July 29, 2019, and demonstrated deliberate, willful, and/or wanton indifference to the property right, quasi-property right, or legitimate claim of entitlement of Plaintiffs to access the body of their deceased daughter, Deleigha Gibson, for purposes of lawful disposition in violation of Plaintiffs' constitutional rights as secured by the Fourteenth Amendment to the United States Constitution and Article 1, §2 & 9 of the Constitution of the State of Florida.

78.     Defendant Gallagher failed in one or more of the following ways:

a. failed to accurately identify the body of Deleigha Gibson as such;

b. failed to conduct any investigation into the identities of the two young women despite notation by body removal that the bodies were only "believed to be" Deleigha Gibson and "Jane Smith," despite the fact that he learned that his office did not have the body of "Jane Smith" but rather the body of Samara Cooks, and despite the DAVID report including a photo of Deleigha Gibson, who looked nothing like Samara Cooks, who was tagged as Deleigha;

c. failed to use Deleigha's unique markings or piercings—a cross tattoo on her wrist and a belly button piercing—to properly identify her body or verify her identity with Plaintiffs;

d. failed to ensure proper preservation of the body of Deleigha Gibson whose identification stated that she wished to be an organ donor;

e. failed to properly tag or label or identify the body of Deleigha Gibson;

f. released the body of Deleigha Gibson to Faith Chapel Funeral Home without authorization;

g. proceeded with autopsies on the wrong bodies;

h. failed to take precautions to ensure proper identification of the body of Deleigha Gibson, treatment of the body in line with her direction to be an organ donor, and treatment of her body with dignity and

respect, as required by Fla. Stat. § 497.386(4), and protection of

Plaintiffs constitutionally protected rights in the body of their

deceased daughter;

i.  failed to comply with the mission statement to "[t]reat bereaved

families with respect, sensitivity and consideration" or to "[p]rovide

families and loved ones of decedents with timely reports and

explanations";

j.  failed to follow policies and procedures that would ensure proper

identification of the deceased;

k.  failed to follow policies and procedures that would ensure protection

of surviving family members' rights with regard to the bodies of

their deceased family member;

l.  failed to communicate with any member of the Florida Highway

Patrol to ensure proper identification;

m. failed to provide Florida Highway Patrol with the fingerprint cards of

the deceased so that the fingerprints could be forwarded to the

appropriate agency for identification purposes;

n.  failed to accurately document Deleigha Gibson's autopsy report

and/or Death Certificate; and,

o.  failed to follow quality control measures.

79.    As a direct and proximate result of the actions or failures to act on the part of Defendant Gallagher, Plaintiffs were prevented from access to the body of their daughter for burial in the manner they desired or embalmment by the professional chosen, causing Plaintiffs to experience unimaginable emotional pain and suffering, mental anguish, discomfort, deterioration, loss of the ability to enjoy life, and have suffered other reasonably foreseeable compensatory damages.

80.    Plaintiffs have retained the undersigned as counsel in pursuit of the protection of their constitutional rights.

WHEREFORE, Plaintiffs pray for the entry of judgment against Defendant Gallagher, jointly and severally with other Defendants to this action, for compensatory damages (past and future) in an amount as proved at trial; for an award of punitive damages; for costs, expenses, and attorney's fees for this action in accordance with 42 U.S.C. §1988; for a trial by jury; and for such other and further relief as the court deems just and proper.

## THIRD CAUSE OF ACTION

### 42 U.S.C. § 1983 Action against Defendant Gulf Coast Autopsy Physicians, P.A.

81.    Plaintiffs re-allege and incorporate by reference each previously stated paragraph 1-47 as if fully set forth herein.

82.     Defendant Gulf Coast Autopsy, while acting under color of State law and by virtue of the authority vested in it by the State of Florida, and its agencies, demonstrated deliberate, willful, and/or wanton indifference to the property right, quasi-property right, or legitimate claim of entitlement of Plaintiffs to access the body of their deceased daughter, Deleigha Gibson, for purposes of lawful disposition in violation of Plaintiffs' constitutional rights as secured by the Fourteenth Amendment to the United States Constitution and Article 1, §2 & 9 of the Constitution of the State of Florida.

83.     Defendant Gulf Coast Autopsy participated in the identification, tagging, autopsy, marking, handling, release, and movement of the body of Deleigha Gibson.

84.     Defendant Gulf Coast Autopsy was on notice that Deleigha Gibson and Samara Cooks's bodies were potentially improperly identified because the body removal service noted that the bodies were only "believed to be", abbreviated "BTB," Deleigha Gibson and "Jane Smith." While both bodies were in the possession of Defendant Gulf Coast Autopsy, a caller notified the medical examiner's office that the identification of one of the decedents as "Jane Smith" was incorrect as a "Jane Smith" was not involved in the collision at all. In fact, this third party caller was the person who notified Defendant Gulf Coast Autopsy that they had Samara Cooks' body in their possession. Upon

information and belief, Defendant Gulf Coast Autopsy did nothing to verify the identities of the bodies, merely crossing out the name "Jane Smith" and changing it to "Samara Cooks."

85.     Defendant Gulf Coast Autopsy was on notice that Deleigha Gibson and Samara Cooks's bodies were improperly identified because they had a photograph of Deleigha that clearly did not resemble the body identified as Deleigha (the body of Samara Cooks) and they had a photograph of "Jane Smith" who clearly did not resemble the body identified as "Jane Smith" (the body of Deleigha Gibson).

86.     Upon information and belief, because the identities were incorrect, Defendant Gulf Coast Autopsy did not properly preserve Deleigha Gibson's body to ensure her organs could be harvested for donation—a wish she expressed on her driver's license identification in the possession of these Defendants.

87.     Despite notice that the identities were incorrect, Defendant Gulf Coast Autopsy proceeded with autopsies and preparation of the misidentified bodies, ultimately sending them to the wrong funeral homes.

88.     Defendant Gulf Coast Autopsy failed to communicate or work with the Florida Highway Patrol to ensure proper identification of the bodies

and failed to provide the Florida Highway Patrol with fingerprint cards that may have confirmed the victims identities.

89.     Defendant Gulf Coast Autopsy failed to use Deleigha Gibson's cross tattoo or belly button piercing to properly identify her body.

90.     Defendant Gulf Coast Autopsy prevented Deleigha's mother from identifying Deleigha's body in person or by photograph. In fact, no representative of Defendant Gulf Coast Autopsy even attempted to reach out to Deleigha' parents to verify unique markings and piercings on Deleigha's body—markings that would have ensured proper identification.

91.     Upon information and belief, Defendant Gulf Coast Autopsy had inadequate procedures in place for properly identifying bodies and/or did not follow adequate policies to ensure proper identification and verification.

92.     Plaintiff Tammy Gibson signed the Consent for Body Release, allowing the District One Medical Examiner to release the body of Deleigha Gibson to Tracy Morton Memorial Chapel.

93.     Defendant Gulf Coast Autopsy, without consent, released the body of Deleigha Gibson to Faith Chapel Funeral Home.

94.     Defendant Gulf Coast Autopsy prevented Plaintiffs from laying their daughter to rest according to their wishes by misidentifying the bodies of Deliegha Gibson and Samara Cooks, incorrectly notating their Death

Certificates, giving incorrect information to the families of the deceased girls, releasing the wrong bodies to the funeral home chosen by each family, all despite possessing picture identification for Deleigha Gibson and despite the disparate age, height, weight, and appearance of the two victims of the crash on July 29, 2019, and demonstrated deliberate, willful, and/or wanton indifference to the property right, quasi-property right, or legitimate claim of entitlement of Plaintiffs to access the body of their deceased daughter, Deleigha Gibson, for purposes of lawful disposition in violation of Plaintiffs' constitutional rights as secured by the Fourteenth Amendment to the United States Constitution and Article 1, §2 & 9 of the Constitution of the State of Florida.

95.     Defendant Gulf Coast Autopsy failed in one or more of the following ways:

a. Employees and/or agents failed to accurately identify the body of Deleigha Gibson as such;

b. employees and/or agents failed to conduct any investigation into the identities of the two young women despite notation by body removal that the bodies were only "believed to be" Deleigha Gibson and "Jane Smith," despite the fact that she learned that her office did not have the body of "Jane Smith" but rather the body of Samara Cooks, and despite the DAVID report including a photo of

Deleigha Gibson, who looked nothing like Samara Cooks, who was tagged as Deleigha;

c.  enacted and implemented policies which prevented the Plaintiffs from viewing the body of Deleigha Gibson, an action that, had it been allowed, would have ensured accurate identification of Deleigha Gibson's body;

d.  employees and/or agents failed to use Deleigha's unique markings or piercings—a cross tattoo on her wrist and a belly button piercing— to properly identify her body or verify her identity with Plaintiffs;

e.  employees and/or agents failed to ensure proper preservation of the body of Deleigha Gibson whose identification stated that she wished to be an organ donor;

f.  employees and/or agents failed to properly tag or label or identify the body of Deleigha Gibson;

g.  employees and/or agents released the body of Deleigha Gibson to Faith Chapel Funeral Home without authorization;

h.  employees and/or agents failed to take precautions to ensure proper identification of the body of Deleigha Gibson, treatment of the body in line with her direction to be an organ donor, and treatment of her body with dignity and respect, as required by Fla. Stat. §

497.386(4), and protection of Plaintiffs constitutionally protected rights in the body of their deceased daughter;

i.  failed to comply with their mission statement to "[t]reat bereaved families with respect, sensitivity and consideration" or to "[p]rovide families and loved ones of decedents with timely reports and explanations";

j.  failed to establish and/or implement policies and procedures to ensure proper identification of the deceased;

k.  failed to establish and/or implement policies and procedures to ensure protection of surviving family members' rights with regard to the bodies of their deceased family member;

l.  failed to liaise with any member of the Florida Highway Patrol to ensure proper identification; and,

m. failed to establish and/or implement quality control measures.

96.     As a direct and proximate result of the actions or failures to act on the part of Defendant Gulf Coast Autopsy, Plaintiffs were prevented from access to the body of their daughter for burial in the manner they desired or embalmment by the professional chosen causing Plaintiffs to experience unimaginable emotional pain and suffering, mental anguish, discomfort,

deterioration, loss of the ability to enjoy life, and have suffered other reasonably foreseeable compensatory damages.

97.     Plaintiffs have retained the undersigned as counsel in pursuit of the protection of their constitutional rights.

WHEREFORE, Plaintiffs pray for the entry of judgment against Defendant Gulf Coast Autopsy, jointly and severally with the other named Defendants, for compensatory damages (past and future) in an amount as proved at trial; for an award of punitive damages; for costs, expenses, and attorney's fees for this action in accordance with 42 U.S.C. §1988; for a trial by jury; and for such other and further relief as the court deems just and proper.

## **FOURTH CAUSE OF ACTION**

### **42 U.S.C. § 1983 Action against Defendant Chad Lynch**

98.     Plaintiffs re-allege and incorporate by reference each previously stated paragraph 1-47 as if fully set forth herein.

99.     Defendant Lynch, while acting under color of State law and by virtue of the authority vested in him by the State of Florida, and its agencies, demonstrated deliberate, willful, and/or wanton indifference to the property right, quasi-property right, or legitimate claim of entitlement of Plaintiffs to access the body of their deceased daughter, Deleigha Gibson, for purposes of lawful disposition in violation of Plaintiffs' constitutional rights as secured by

the Fourteenth Amendment to the United States Constitution and Article 1, §2

& 9 of the Constitution of the State of Florida.

100.      Defendant Lynch participated in the identification,

tagging or otherwise marking, handling, and movement of the body of Deleigha

Gibson.

101.      Upon information and belief, Defendant Lynch

misidentified the body of Samara Cooks as Deleigha Gibson by handing the

body removal service the DAVID report of Deleigha Gibson when they

removed the body of Samara Cooks from the scene of the crash. Upon

information and belief, Defendant Lynch misidentified the body of Deleigha

Gibson as "Jane Smith" by handing the body removal service the DAVID

report of "Jane Smith" when they removed her body from the scene of the

crash. Defendant Lynch misidentified the two bodies despite possessing picture

identification for Deleigha Gibson and despite the disparate age, height, weight,

and appearance of the two victims of the crash on July 29, 2019.

102.    The actions by Defendant Lynch, while acting under color of

State law and by virtue of the authority vested in him by the State of Florida,

and its agencies, to misidentify the bodies and fail to conduct any follow-up

investigation despite questions as to the identities of the two crash victims,

demonstrated deliberate, willful, and/or wanton indifference to the property

right, quasi-property right, or legitimate claim of entitlement of Plaintiffs to access the body of their deceased daughter, Deleigha Gibson, for purposes of lawful disposition in violation of Plaintiffs' constitutional rights as secured by the Fourteenth Amendment to the United States Constitution and Article 1, §2 & 9 of the Constitution of the State of Florida.

103.    Defendant Lynch failed in one or more of the following ways:

a. failed to accurately identify the body of Deleigha Gibson as such;

b. failed to document or consider Deleigha's cross tattoo on her wrist or belly button piercing to properly identify her body;

c. failed to ascertain a correct body position for Deleigha Gibson for the Florida Traffic Crash Report;

d. failed to ensure proper preservation of the body of Deleigha Gibson whose identification stated that she wished to be an organ donor;

e. failed to properly tag or label or identify the body of Deleigha Gibson before her transfer to the custody and/or control of Defendant Minyard, Defendant Gallagher, and Defendant Gulf Coast Autopsy;

f. provided the sensitive DAVID report of Deleigha Gibson to the body removal service as identification for Samara Cooks;

g.  provided the sensitive DAVID report of "Jane Smith," an individual not involved at all in the crash, to the body removal service as identification for Deleigha Gibson;

h.  failed to take precautions to ensure proper identification of the body of Deleigha Gibson, treatment of the body in line with her direction to be an organ donor, and treatment of her body with dignity and respect, as required by Fla. Stat. § 497.386(4), and protection of Plaintiffs constitutionally protected rights in the body of their deceased daughter.

104.     As a direct and proximate result of the actions or failures to act on the part of Defendant Lynch, Plaintiffs were prevented from access to the body of their daughter for burial in the manner they desired or embalmment by the professional chosen causing Plaintiffs to experience unimaginable emotional pain and suffering, mental anguish, discomfort, deterioration, loss of the ability to enjoy life, and have suffered other reasonably foreseeable compensatory damages.

105.     Plaintiffs have retained the undersigned as counsel in pursuit of the protection of their constitutional rights.

WHEREFORE, Plaintiffs pray for the entry of judgment against Defendant Lynch, jointly and severally with the other named Defendants, for

compensatory damages (past and future) in an amount as proved at trial; for an award of punitive damages; for costs, expenses, and attorney's fees for this action in accordance with 42 U.S.C. §1988; for a trial by jury; and for such other and further relief as the court deems just and proper.

## FIFTH CAUSE OF ACTION

### 42 U.S.C. § 1983 Action against Defendant Thomas Paschal

106.     Plaintiffs re-allege and incorporate by reference each previously stated paragraph 1-47 as if fully set forth herein.

107.     Defendant Paschal, while acting under color of State law and by virtue of the authority vested in him by the State of Florida, and its agencies, demonstrated deliberate, willful, and/or wanton indifference to the property right, quasi-property right, or legitimate claim of entitlement of Plaintiffs to access the body of their deceased daughter, Deleigha Gibson, for purposes of lawful disposition in violation of Plaintiffs' constitutional rights as secured by the Fourteenth Amendment to the United States Constitution and Article 1, §2 & 9 of the Constitution of the State of Florida.

108.     Defendant Paschal participated in the identification, tagging or otherwise marking, handling, and movement of the body of Deleigha Gibson.

109.     Upon information and belief, Defendant Paschal, despite possessing a picture identification of Deleigha Gibson at the scene of the crash,

despite the fact that Deleigha Gibson was recognizable as herself at the scene of the crash, and despite his duty as lead Traffic Homicide Investigator to work with the medical examiner's office to ensure proper identification, as described in the Florida Highway Patrol Traffic Homicide Investigations Policy Manual, failed to identify the bodies or follow-up to ensure proper identification of the bodies of Deleigha Gibson and Samara Cooks.

110.    Upon information and belief, Defendant Paschal misidentified the final resting locations of the bodies of Deliegha Gibson and Samara Cooks and incorrectly notated and/or approved the Florida Traffic Crash Report with body locations and positions in the vehicle, gave incorrect information to the families of the deceased girls, and to date has yet to correct the Florida Traffic Crash Report to convey the correct final resting locations and identities of the bodies of Deleigha Gibson and Samara Cooks.

111.    Upon information and belief, Defendant Paschal failed to take identification fingerprints of Deleigha Gibson or Samara Cooks, failed to ensure or even inquire as to whether the medical examiner's office took identification fingerprints, and failed to forward fingerprint cards to the appropriate federal agency, as required by the Florida Highway Patrol Traffic Homicide Investigations Policy Manual. In fact, Defendant Paschal failed to take any action to properly identify the bodies of Deleigha Gibson and Samara Cooks

and/or failed to forward any helpful information to the District One Medical Examiner's Office.

112.    The actions by Defendant Paschal, while acting under color of State law and by virtue of the authority vested in him by the State of Florida, and its agencies, to misidentify the bodies, fail to conduct any investigation into the identities beyond actions at the crash scene, fail to communicate with the office of the medical examiner, fail to accurately identify the victims in the crash report and traffic homicide investigation report, and fail to obtain fingerprints or ensure that fingerprints were obtained and sent to the appropriate agency, demonstrated deliberate, willful, and/or wanton indifference to the property right, quasi-property right, or legitimate claim of entitlement of Plaintiffs to access the body of their deceased daughter, Deleigha Gibson, for purposes of lawful disposition in violation of Plaintiffs' constitutional rights as secured by the Fourteenth Amendment to the United States Constitution and Article 1, §2 & 9 of the Constitution of the State of Florida.

113.    Defendant Paschal failed in one or more of the following ways:

a.  failed to accurately identify the body of Deleigha Gibson as such;

b.  failed to document or consider Deleigha's cross tattoo on her wrist or belly button piercing to properly identify her body;

c. failed to ascertain a correct body position for Deleigha Gibson for the Florida Traffic Crash Report or Traffic Homicide Investigation Report;

d. failed to ensure proper preservation of the body of Deleigha Gibson whose identification stated that she wished to be an organ donor;

e. failed to properly tag or label or identify the body of Deleigha Gibson before her transfer to the custody and/or control of Defendant Minyard, Defendant Gallagher, and Defendant Gulf Coast Autopsy;

f. failed to follow or implement policies and procedures to adequately prevent confusion of bodies and ensure protection of surviving family members' rights to the bodies of their deceased family member;

g. failed to notify the family of Deleigha Gibson of accurate facts concerning her involvement in the crash on July 29, 2019, including her position in the vehicle before the crash, her body position after the crash, and the probable cause of death;

h. failed to accurately document the Florida Traffic Crash Report and the Traffic Homicide Investigation Report;

i. failed to implement and/or enforce quality control measures;

j. failed to take identification fingerprints of Deleigha Gibson or Samara Cooks;

k. failed to ensure or even inquire as to whether the medical examiner's office took identification fingerprints;

l. failed to forward fingerprint cards to the appropriate federal agency, as required by the Florida Highway Patrol Traffic Homicide Investigations Policy Manual;

m. failed to take any action to properly identify the bodies of Deleigha Gibson and Samara Cooks after he left the crash site and failed to communicate at all with the District One Medical Examiner's Office, Defendant Minyard, Defendant Gallagher, or Defendant Gulf Coast Autopsy;

n. attempted to interfere with the body of Deleigha Gibson by arriving at Tracy Morton Funeral Home in order to switch the bodies of Deleigha Gibson and Samara Cooks in an attempt to hide the confusion of the bodies from Plaintiffs;

o. failed to take precautions to ensure proper identification of the body of Deleigha Gibson, treatment of the body in line with her direction to be an organ donor, and treatment of her body with dignity and respect, as required by Fla. Stat. § 497.386(4), and protection of Plaintiffs constitutionally protected rights in the body of their deceased daughter.

114.     As a direct and proximate result of the actions or failures to act on the part of Defendant Paschal, Plaintiffs were prevented from access to the body of their daughter for burial in the manner they desired or embalmment by the professional chosen causing Plaintiffs to experience unimaginable emotional pain and suffering, mental anguish, discomfort, deterioration, loss of the ability to enjoy life, and have suffered other reasonably foreseeable compensatory damages.

115.     Plaintiffs have retained the undersigned as counsel in pursuit of the protection of their constitutional rights.

WHEREFORE, Plaintiffs pray for the entry of judgment against Defendant Paschal, jointly and severally with the other named Defendants, for compensatory damages (past and future) in an amount as proved at trial; for an award of punitive damages; for costs, expenses, and attorney's fees for this action in accordance with 42 U.S.C. §1988; for a trial by jury; and for such other and further relief as the court deems just and proper.

## SIXTH CAUSE OF ACTION

### 42 U.S.C. § 1983 Action against Defendant Randle Padgett

116.     Plaintiffs re-allege and incorporate by reference each previously stated paragraph 1-47 as if fully set forth herein.

117.    Defendant Padgett, while acting under color of State law and by virtue of the authority vested in him by the State of Florida, and its agencies, demonstrated deliberate, willful, and/or wanton indifference to the property right, quasi-property right, or legitimate claim of entitlement of Plaintiffs to access the body of their deceased daughter, Deleigha Gibson, for purposes of lawful disposition in violation of Plaintiffs' constitutional rights as secured by the Fourteenth Amendment to the United States Constitution and Article 1, §2 & 9 of the Constitution of the State of Florida.

118.    Defendant Padgett participated in the identification, and handling of the body of Deleigha Gibson as well as the enactment or enforcement of the policies and procedures related to the identification, tagging, marking, handling, or other movement of the body of Deleigha Gibson.

119.    Upon information and belief, Defendant Padgett misidentified the final resting locations of the bodies of Deliegha Gibson and Samara Cooks and incorrectly notated and/or approved the Florida Traffic Crash Report with body locations and positions in the vehicle, gave incorrect information to the families of the deceased girls, and to date has yet to correct the Florida Traffic Crash Report to convey the correct final resting locations and identities of the bodies of Deleigha Gibson and Samara Cooks.

120.     Upon information and belief, Defendant Padgett failed to establish and maintain a liaison with the District One Medical Examiner's Office to ensure proper communication and, in this particular case, to accurately identify the bodies of Deleigha Gibson and Samara Cooks, as required by the Florida Highway Patrol Traffic Homicide Investigations Policy Manual.

121.     Upon information and belief, Defendant Padgett had inadequate procedures in place for properly identifying bodies and/or did not enforce policies to ensure proper identification and verification.

122.     The actions by Defendant Padgett, while acting under color of State law and by virtue of the authority vested in him by the State of Florida, and its agencies, to misidentify the bodies, fail to conduct any investigation into the identities, fail to communicate with the office of the medical examiner, fail to accurately identify the victims in the crash report and traffic homicide investigation report, and fail to obtain fingerprints or ensure that fingerprints were obtained and sent to the appropriate agency, demonstrated deliberate, willful, and/or wanton indifference to the property right, quasi-property right, or legitimate claim of entitlement of Plaintiffs to access the body of their deceased daughter, Deleigha Gibson, for purposes of lawful disposition in violation of Plaintiffs' constitutional rights as secured by the Fourteenth Amendment to the

United States Constitution and Article 1, §2 & 9 of the Constitution of the State of Florida.

123.     Defendant Padgett failed in one or more of the following ways:

a. In his supervisory role, failed to ensure a correct body position for Deleigha Gibson for the Florida Traffic Crash Report or the Traffic Homicide Investigation Report but approved them as accurate;

b. failed to establish, implement, or enforce policies and procedures to adequately prevent confusion of bodies and ensure protection of surviving family members' rights to the bodies of their deceased family member;

c. failed to establish, implement, or enforce policies and procedures to adequately ensure preservation of the body of an organ donor;

d. failed to establish, implement, and/or enforce quality control measures;

e. failed to establish and maintain a liaison with the District One Medical Examiner's Office to ensure proper communication and, in this particular case, to accurately identify the bodies of Deleigha Gibson and Samara Cooks, as required by the Florida Highway Patrol Traffic Homicide Investigations Policy Manual;

f.  failed to take precautions to ensure proper identification of the body

of Deleigha Gibson, treatment of the body in line with her direction to

be an organ donor, and treatment of her body with dignity and respect,

as required by Fla. Stat. § 497.386(4), and protection of Plaintiffs

constitutionally protected rights in the body of their deceased

daughter.

124.    As a direct and proximate result of the actions or failures to act

on the part of Defendant Padgett, Plaintiffs were prevented from access to the

body of their daughter for burial in the manner they desired or embalmment by

the professional chosen causing Plaintiffs to experience unimaginable

emotional pain and suffering, mental anguish, discomfort, deterioration, loss of

the ability to enjoy life, and have suffered other reasonably foreseeable

compensatory damages.

125.    Plaintiffs have retained the undersigned as counsel in pursuit

of the protection of their constitutional rights.

WHEREFORE, Plaintiffs pray for the entry of judgment against Defendant

Padgett, jointly and severally with the other named Defendants, for

compensatory damages (past and future) in an amount as proved at trial; for an

award of punitive damages; for costs, expenses, and attorney's fees for this

action in accordance with 42 U.S.C. §1988; for a trial by jury; and for such other and further relief as the court deems just and proper.

## SEVENTH CAUSE OF ACTION

### Wanton and Willful Desecration of Corpse by Defendant Tracy Morton Memorial Chapel, LLC

126.      Plaintiffs reallege and incorporate by reference paragraphs 1, 2, and 4 through 47 above as if specifically set out herein.

127.      Defendant Tracy Morton undertook and was under a duty to perform embalming, visitation, and funeral services for Deleigha Gibson with dignity and respect and was under a duty not to desecrate the body of Deleigha Gibson. Furthermore, Defendant Tracy Morton's duties include, but are not limited to, the following:

a.  A duty to protect and preserve Deleigha Gibson's body in a dignified, respectful, and sacred manner and the manner intended by her next of kin;

b.  A duty to properly identify the body of the deceased, Deleigha Gibson;

c.  A duty to properly preserve the body of the deceased in line with the deceased and next of kin's wishes;

d.  A duty to embalm only the body for which it has authorization;

e. A duty to treat surviving family members of the deceased with honesty, dignity, and respect;

f. A duty to act to minimize disruption of the body during the preparation and embalming process; and

g. A duty to protect the next of kin's right to bury their loved one's body in an unmutilated condition.

128.    Defendant Tracy Morton was careless, reckless, willful, and/or wanton in the embalming, preparation, visitation, and funeral services for Deleigha Gibson. Defendant Tracy Morton's carelessness, recklessness, willfulness, and/or wantonness includes, but is not limited to, the following particulars:

a. Failing to enact policies and procedures to accurately identify whether it had the correct body of Deleigha Gibson in its possession and/or failed to comply with adequate policies and procedures;

b. Failing to adequately identify the body of Deleigha Gibson;

c. Failing to discover that it had the incorrect body in its possession despite obvious evidence;

d. Failing to embalm the appropriate body for which it had authorization;

e. Failing to adequately preserve and prepare the body of Deleigha Gibson after it obtained control of her body;

f.  Failing to protect and preserve Deleigha Gibson's body in a dignified, respectful, and sacred manner and the manner intended by her next of kin;

g.  Failing to treat Plaintiffs with honesty, dignity, and respect, but rather attempting to hide its mistakes from the Plaintiffs;

h.  Failing to allow Plaintiff Tammy Gibson to view the body of her deceased daughter (upon viewing she would have discovered that Defendant Tracy Morton had the incorrect body);

i.  Failing to minimize disruption of the body during the preparation and/or embalming process;

j.  Failing to acknowledge or respect the Plaintiffs while they were in the waiting room when Defendant Tracy Morton had finally discovered that it had the incorrect body;

k.  Wantonly disregarding funeral home regulations and accepted industry standards when identifying and preparing Deleigha Gibson's body; and,

l.  Otherwise committing wanton and/or reckless acts that proximately caused Plaintiffs to suffer damage.

129.     These reckless, wanton, willful, and/or outrageous actions by Defendant Tracy Morton have directly and proximately caused actual, direct,

incidental, consequential, and special damages to Plaintiffs including, but not limited to, nightmares and visions of their daughter's mutilated remains, loss of appetite, recurring night terrors, anxiety, stress, pain, suffering, and mental anguish.

## EIGHTH CAUSE OF ACTION

### Wanton and Willful Desecration of Corpse by Defendant Faith Chapel Funeral Services

130.    Plaintiffs reallege and incorporate by reference paragraphs 1, 2, and 4 through 47 above as if specifically set out herein.

131.    Defendant Faith Chapel undertook and was under a duty to perform embalming services only with express authorization from next of kin. *See* Fla. Stat. § 497.152(7)(d). Furthermore, Defendant Faith Chapel's duties include, but are not limited to, the following:

   a.  A duty to perform embalming services only with express authorization, Fla. Stat. § 497.152(7)(d);

   b.  A duty to protect and preserve all bodies in a dignified, respectful, and sacred manner and the manner intended by the next of kin, Fla. Stat. § 497.386(4);

   c.  A duty to properly identify the body of the deceased for which they have authorization;

d. A duty to treat surviving family members of the deceased with honesty, dignity, and respect;

e. A duty to act to minimize disruption of the body during the embalmment or preparation process; and

f. A duty to protect the next of kin's right to bury their loved one's body in an unmutilated condition.

132.        Defendant Faith Chapel was careless, reckless, willful, and/or wanton in the embalming and interference with the body of Deleigha Gibson. Defendant Faith Chapel's carelessness, recklessness, willfulness, and/or wantonness includes, but is not limited to, the following particulars:

a. Failing to put in place policies and procedures to adequately identify whether it had the correct body of Samara Cooks in its possession and/or failed to comply with adequate policies and procedures;

b. Failing to adequately identify the body of Samara Cooks;

c. Failing to discover that it had the incorrect body in its possession despite obvious evidence;

d. Embalmed the body of Deleigha Gibson without authorization;

e. Failing to adequately preserve the body of Deleigha Gibson when it was in its possession;

f.  Failing to protect and preserve Deleigha Gibson's body in a dignified, respectful, and sacred manner and the manner intended by her next of kin;

g.  Failing to treat Plaintiffs with honesty, dignity, and respect, but rather failing to notify Plaintiffs that it had the body of their daughter;

h.  Failing to minimize disruption of the body during the preparation and/or embalmment process;

i.  Wantonly disregarding funeral home regulations and accepted industry standards when identifying and preparing the body in its possession, that of Deleigha Gibson;

j.  Otherwise committing wanton and/or reckless acts that proximately caused Plaintiffs to suffer damage.

133.    These reckless, wanton, willful, and/or outrageous actions by Defendant Faith Chapel have directly and proximately caused actual, direct, incidental, consequential, and special damages to Plaintiffs including, but not limited to, nightmares and visions of their daughter's mutilated remains, loss of appetite, recurring night terrors, anxiety, stress, pain, suffering, and mental anguish.

## NINTH CAUSE OF ACTION

**Tort of Outrage by Defendant Tracy Morton Memorial Chapel, LLC**

134.     Plaintiffs reallege and incorporate by reference paragraphs 1, 2, and 4 through 47 above as if specifically set out herein.

135.     Defendant Tracy Morton either intended to inflict emotional distress on Plaintiffs by committing the acts described below or knew or should have known that emotional distress was likely to result from these actions. The following conduct by Defendant Tracy Morton was extreme and outrageous:

   a. Failing to enact policies and procedures to accurately identify whether it had the correct body of Deleigha Gibson in its possession and/or failed to comply with adequate policies and procedures;

   b. Failing to adequately identify the body of Deleigha Gibson;

   c. Failing to discover that it had the incorrect body in its possession despite obvious evidence, including but not limited to, acknowledging the vast difference in body size from Deleigha Gibson's typical clothing size, possessing photographs that looked nothing like the body in Defendant's possession, and failing to document unique markings or piercings;

   d. Failing to embalm the appropriate body for which it had authorization;

   e. Failing to adequately preserve and prepare the body of Deleigha Gibson after it obtained control of her body;

f.  Failing to protect and preserve Deleigha Gibson's body in a dignified, respectful, and sacred manner and the manner intended by her next of kin;

g.  Failing to treat Plaintiffs with honesty, dignity, and respect, but rather attempting to hide its mistakes from the Plaintiffs;

h.  Preventing Plaintiff Tammy Gibson from viewing the body of her deceased daughter (upon viewing she would have discovered that Defendant Tracy Morton had the incorrect body);

i.  Failing to minimize disruption of the body during the preparation and/or embalming process;

j.  Failing to acknowledge or respect the Plaintiffs while they were in the waiting room when Defendant Tracy Morton had finally discovered that it had the incorrect body;

k.  Wantonly disregarding funeral home regulations and accepted industry standards when identifying and preparing Deleigha Gibson's body; and,

l.  Otherwise committing wanton and/or reckless acts that were likely to and did proximately cause Plaintiffs to suffer damage.

136.    After Defendant Tracy Morton committed the acts delineated in the preceding paragraph and as a direct and proximate result of its conduct,

Plaintiffs suffered severe emotional distress such that no reasonable person could be expected to endure.

137.    These outrageous actions by Defendant Tracy Morton have directly and proximately caused actual, direct, incidental, consequential, and special damages to Plaintiffs including, but not limited to, nightmares and visions of their daughter's mutilated remains, loss of appetite, recurring night terrors, anxiety, stress, pain, suffering, and mental anguish.

## TENTH CAUSE OF ACTION

### Tort of Outrage by Defendant Faith Chapel Funeral Services, LLC

138.    Plaintiffs reallege and incorporate by reference paragraphs 1, 2, and 4 through 47 above as if specifically set out herein.

139.    Defendant Faith Chapel either intended to inflict emotional distress on Plaintiffs by committing the acts described below or knew or should have known that emotional distress was likely to result from these actions. The following conduct by Defendant Faith Chapel was extreme and outrageous:

a. Failing to put in place policies and procedures to adequately identify whether it had the correct body of Samara Cooks in its possession and/or failed to comply with adequate policies and procedures;

b. Failing to adequately identify the body of Samara Cooks;

c. Failing to discover that it had the incorrect body in its possession despite obvious evidence, including but not limited to, acknowledging the vast difference in body size of Deleigha Gibson's body as compared to the clothes provided by Samara's family, possessing photographs that looked nothing like the body in Defendant's possession, and failing to document unique markings or piercings;

d. Failing to adequately preserve the body of Deleigha Gibson when her body was in its possession;

e. Embalming the body of Deleigha Gibson without authorization;

f. Failing to protect and preserve Deleigha Gibson's body in a dignified, respectful, and sacred manner and the manner intended by her next of kin;

g. Failing to treat Plaintiffs with honesty, dignity, and respect, but rather failing to notify Plaintiffs that it had the body of their daughter;

h. Failing to minimize disruption of the body during the preparation and/or embalmment process;

i. Wantonly disregarding funeral home regulations and accepted industry standards when identifying and preparing the body in its possession, that of Deleigha Gibson;

j.  Otherwise committing wanton and/or reckless acts that proximately caused Plaintiffs to suffer damage.

140.     After Defendant Faith Chapel committed the acts delineated in the preceding paragraph and as a direct and proximate result of its conduct, Plaintiffs suffered severe emotional distress such that no reasonable person could be expected to endure.

141.     These outrageous actions by Defendant Faith Chapel have directly and proximately caused actual, direct, incidental, consequential, and special damages to Plaintiffs including, but not limited to, nightmares and visions of their daughter's mutilated remains, loss of appetite, recurring night terrors, anxiety, stress, pain, suffering, and mental anguish.

## ELEVENTH CAUSE OF ACTION

### Tort of Outrage by Defendant Chad Lynch

142.     Plaintiffs reallege and incorporate by reference paragraphs 1, 2, and 4 through 47 above as if specifically set out herein.

143.     Defendant Chad Lynch either intended to inflict emotional distress on Plaintiffs by committing the acts described below or knew or should have known that emotional distress was likely to result from these actions. The following conduct by Defendant Chad Lynch was extreme and outrageous:

a. failed to accurately identify the body of Deleigha Gibson as such, despite clear photographic evidence;

b. failed to document or consider Deleigha's cross tattoo on her wrist or belly button piercing to properly identify her body;

c. failed to ascertain a correct body position for Deleigha Gibson for the Florida Traffic Crash Report, knowing that her family would think she was thrown from the vehicle based on the crash report;

d. failed to ensure proper preservation of the body of Deleigha Gibson whose identification stated that she wished to be an organ donor;

e. failed to properly tag or label or identify the body of Deleigha Gibson before her transfer to the custody and/or control of Defendant Minyard, Defendant Gallagher, and Defendant Gulf Coast Autopsy;

f. provided the sensitive DAVID report of Deleigha Gibson to the body removal service as identification for Samara Cooks;

g. provided the sensitive DAVID report of "Jane Smith," an individual not involved at all in the crash, to the body removal service as identification for Deleigha Gibson;

h. upon information and belief, rushed through the identification of the bodies and communication with the body removal service;

i.  failed to take precautions to ensure proper identification of the body of Deleigha Gibson, treatment of the body in line with her direction to be an organ donor, and treatment of her body with dignity and respect, as required by Fla. Stat. § 497.386(4), and protection of Plaintiffs constitutionally protected rights in the body of their deceased daughter

144.    After Defendant Chad Lynch committed the acts delineated in the preceding paragraph and as a direct and proximate result of his conduct, Plaintiffs suffered severe emotional distress such that no reasonable person could be expected to endure it.

145.    These outrageous actions by Defendant Chad Lynch have directly and proximately caused actual, direct, incidental, consequential, and special damages to Plaintiffs including, but not limited to, nightmares and visions of their daughter's mutilated remains, loss of appetite, recurring night terrors, anxiety, stress, pain, suffering, and mental anguish.

## TWELFTH CAUSE OF ACTION

### Tort of Outrage by Defendant Thomas Paschal

146.    Plaintiffs reallege and incorporate by reference paragraphs 1, 2, and 4 through 47 above as if specifically set out herein.

147.    Defendant Thomas Paschal either intended to inflict emotional distress on Plaintiffs by committing the acts described below or knew or should have known that emotional distress was likely to result from these actions. The following conduct by Defendant Paschal was extreme and outrageous:

a.  failed to accurately identify the body of Deleigha Gibson as such, despite clear photographic evidence;

b.  failed to document or consider Deleigha's cross tattoo on her wrist or belly button piercing to properly identify her body;

c.  failed to ascertain a correct body position for Deleigha Gibson for the Florida Traffic Crash Report or Traffic Homicide Investigation Report, knowing that her family would think she was thrown from the vehicle based on the crash report;

d.  failed to ensure proper preservation of the body of Deleigha Gibson whose identification stated that she wished to be an organ donor;

e.  failed to properly tag or label or identify the body of Deleigha Gibson before her transfer to the custody and/or control of Defendant Minyard, Defendant Gallagher, and Defendant Gulf Coast Autopsy;

f.  failed to follow or implement policies and procedures to adequately prevent confusion of bodies and ensure protection of surviving family members' rights to the bodies of their deceased family member;

g.  failed to notify the family of Deleigha Gibson of accurate facts concerning her involvement in the crash on July 29, 2019, including her position in the vehicle before the crash, her body position after the crash, and the probable cause of death;

h.  failed to accurately document the Florida Traffic Crash Report and the Traffic Homicide Investigation Report, even to the present;

i.  failed to take identification fingerprints of Deleigha Gibson or Samara Cooks;

j.  failed to ensure or even inquire as to whether the medical examiner's office took identification fingerprints;

k.  failed to forward fingerprint cards to the appropriate federal agency, as required by the Florida Highway Patrol Traffic Homicide Investigations Policy Manual;

l.  failed to take any action to properly identify the bodies of Deleigha Gibson and Samara Cooks after he left the crash site and failed to communicate at all with the District One Medical Examiner's Office, Defendant Minyard, Defendant Gallagher, or Defendant Gulf Coast Autopsy;

m. attempted to interfere with the body of Deleigha Gibson by arriving at Tracy Morton Funeral Home in order to switch the bodies of Deleigha

Gibson and Samara Cooks in an attempt to hide the confusion of the bodies from Plaintiffs;

n. failed to take precautions to ensure proper identification of the body of Deleigha Gibson, treatment of the body in line with her direction to be an organ donor, and treatment of her body with dignity and respect, as required by Fla. Stat. § 497.386(4), and protection of Plaintiffs. constitutionally protected rights in the body of their deceased daughter

148. After Defendant Paschal committed the acts delineated in the preceding paragraph and as a direct and proximate result of his conduct, Plaintiffs suffered severe emotional distress such that no reasonable person could be expected to endure it.

149. These outrageous actions by Defendant Paschal have directly and proximately caused actual, direct, incidental, consequential, and special damages to Plaintiffs including, but not limited to, nightmares and visions of their daughter's mutilated remains, loss of appetite, recurring night terrors, anxiety, stress, pain, suffering, and mental anguish.

## THIRTEENTH CAUSE OF ACTION

### Tort of Outrage by Defendant Randle Padgett

150. Plaintiffs reallege and incorporate by reference paragraphs 1, 2, and 4 through 47 above as if specifically set out herein.

151.     Defendant Randle Padgett either intended to inflict emotional distress on Plaintiffs by committing the acts described below or knew or should have known that emotional distress was likely to result from these actions. The following conduct by Defendant Padgett was extreme and outrageous:

a.  In his supervisory role, to date, has failed to ensure a correct body position for Deleigha Gibson for the Florida Traffic Crash Report or the Traffic Homicide Investigation Report, but rather approved them as accurate;

b.  failed to establish, implement, or enforce policies and procedures to adequately prevent confusion of bodies and ensure protection of surviving family members' rights to the bodies of their deceased family member;

c.  failed to establish, implement, or enforce policies and procedures to adequately ensure preservation of the body of an organ donor;

d.  failed to establish and maintain a liaison with the District One Medical Examiner's Office to ensure proper communication and, in this particular case, to accurately identify the bodies of Deleigha Gibson and Samara Cooks, as required by the Florida Highway Patrol Traffic Homicide Investigations Policy Manual;

e. failed to take precautions to ensure proper identification of the body

of Deleigha Gibson, treatment of the body in line with her direction to

be an organ donor, and treatment of her body with dignity and respect,

as required by Fla. Stat. § 497.386(4), and protection of Plaintiffs

constitutionally protected rights in the body of their deceased

daughter.

152.    After Defendant Padgett committed the acts delineated in the

preceding paragraph and as a direct and proximate result of his conduct,

Plaintiffs suffered severe emotional distress such that no reasonable person

could be expected to endure it.

153.    These outrageous actions by Defendant Padgett have directly

and proximately caused actual, direct, incidental, consequential, and special

damages to Plaintiffs including, but not limited to, nightmares and visions of

their daughter's mutilated remains, loss of appetite, recurring night terrors,

anxiety, stress, pain, suffering, and mental anguish.

## FOURTEENTH CAUSE OF ACTION

### Tort of Outrage by Defendant Andrea Minyard

154.    Plaintiffs reallege and incorporate by reference paragraphs 1, 2,

and 4 through 47 above as if specifically set out herein.

155.     Defendant Andrea Minyard either intended to inflict emotional distress on Plaintiffs by committing the acts described below or knew or should have known that emotional distress was likely to result from these actions. The following conduct by Defendant Minyard was extreme and outrageous:

a.  failed to accurately identify the body of Deleigha Gibson as such;

b.  failed to conduct any investigation into the identities of the two young women despite notation by body removal that the bodies were only "believed to be" Deleigha Gibson and "Jane Smith," despite the fact that she learned that her office did not have the body of "Jane Smith" but rather the body of Samara Cooks, and despite the DAVID report including a photo of Deleigha Gibson, who looked nothing like Samara Cooks, who was tagged as Deleigha;

c.  enacted policies which prevented the Plaintiffs from viewing the body of Deleigha Gibson, an action that, had it been allowed, would have ensured accurate identification of Deleigha Gibson's body;

d.  failed to use Deleigha's unique markings or piercings—a cross tattoo on her wrist and a belly button piercing—to properly identify her body or verify her identity with Plaintiffs;

e.  failed to ensure proper preservation of the body of Deleigha Gibson whose identification stated that she wished to be an organ donor;

f.  failed to properly tag or label or identify the body of Deleigha Gibson;

g.  released the body of Deleigha Gibson to Faith Chapel Funeral Home without authorization;

h.  proceeded or allowed Defendant Gallagher to proceed with autopsies on the wrong bodies;

i.  failed to take precautions to ensure proper identification of the body of Deleigha Gibson, treatment of the body in line with her direction to be an organ donor, and treatment of her body with dignity and respect, as required by Fla. Stat. § 497.386(4), and protection of Plaintiffs constitutionally protected rights in the body of their deceased daughter;

j.  failed to comply with her office's mission statement to "[t]reat bereaved families with respect, sensitivity and consideration" or to "[p]rovide families and loved ones of decedents with timely reports and explanations";

k.  failed to establish and/or implement policies and procedures to ensure proper identification of the deceased;

l.  failed to establish and/or implement policies and procedures to ensure protection of surviving family members' rights with regard to the bodies of their deceased family member;

m. failed to communicate with any member of the Florida Highway Patrol to ensure proper identification;

n. failed to provide Florida Highway Patrol with the fingerprint cards of the deceased so that the fingerprints could be forwarded to the appropriate agency for identification purposes; and,

o. failed to accurately document Deleigha Gibson's autopsy report and/or Death Certificate.

156. After Defendant Minyard committed the acts delineated in the preceding paragraph and as a direct and proximate result of her conduct, Plaintiffs suffered severe emotional distress such that no reasonable person could be expected to endure it.

157. These outrageous actions by Defendant Minyard have directly and proximately caused actual, direct, incidental, consequential, and special damages to Plaintiffs including, but not limited to, nightmares and visions of their daughter's mutilated remains, loss of appetite, recurring night terrors, anxiety, stress, pain, suffering, and mental anguish.

## FIFTEENTH CAUSE OF ACTION

### Tort of Outrage by Defendant Timothy Gallagher

158. Plaintiffs reallege and incorporate by reference paragraphs 1, 2, and 4 through 47 above as if specifically set out herein.

159.     Defendant Timothy Gallagher either intended to inflict emotional distress on Plaintiffs by committing the acts described below or knew or should have known that emotional distress was likely to result from these actions. The following conduct by Defendant Gallagher was extreme and outrageous:

a.  failed to accurately identify the body of Deleigha Gibson as such;

b.  failed to conduct any investigation into the identities of the two young women despite notation by body removal that the bodies were only "believed to be" Deleigha Gibson and "Jane Smith," despite the fact that he learned that his office did not have the body of "Jane Smith" but rather the body of Samara Cooks, and despite the DAVID report including a photo of Deleigha Gibson, who looked nothing like Samara Cooks, who was tagged as Deleigha;

c.  failed to use Deleigha's unique markings or piercings—a cross tattoo on her wrist and a belly button piercing—to properly identify her body or verify her identity with Plaintiffs;

d.  failed to ensure proper preservation of the body of Deleigha Gibson whose identification stated that she wished to be an organ donor;

e.  failed to properly tag or label or identify the body of Deleigha Gibson;

f.  released the body of Deleigha Gibson to Faith Chapel Funeral Home without authorization;

g.  proceeded with autopsies on the wrong bodies;

h.  failed to take precautions to ensure proper identification of the body of Deleigha Gibson, treatment of the body in line with her direction to be an organ donor, and treatment of her body with dignity and respect, as required by Fla. Stat. § 497.386(4), and protection of Plaintiffs constitutionally protected rights in the body of their deceased daughter;

i.  failed to comply with the mission statement to "[t]reat bereaved families with respect, sensitivity and consideration" or to "[p]rovide families and loved ones of decedents with timely reports and explanations";

j.  failed to follow policies and procedures that would ensure proper identification of the deceased;

k.  failed to follow policies and procedures that would ensure protection of surviving family members' rights with regard to the bodies of their deceased family member;

l.  failed to communicate with any member of the Florida Highway Patrol to ensure proper identification;

m. failed to provide Florida Highway Patrol with the fingerprint cards of

the deceased so that the fingerprints could be forwarded to the

appropriate agency for identification purposes; and,

n. failed to accurately document Deleigha Gibson's autopsy report

and/or Death Certificate.

160.    After Defendant Gallagher committed the acts delineated in the

preceding paragraph and as a direct and proximate result of his conduct,

Plaintiffs suffered severe emotional distress such that no reasonable person

could be expected to endure it.

161.    These outrageous actions by Defendant Gallagher have directly

and proximately caused actual, direct, incidental, consequential, and special

damages to Plaintiffs including, but not limited to, nightmares and visions of

their daughter's mutilated remains, loss of appetite, recurring night terrors,

anxiety, stress, pain, suffering, and mental anguish.

## SIXTEENTH CAUSE OF ACTION

### Tort of Outrage by Defendant Gulf Coast Autopsy Physicians, P.A.

162.    Plaintiffs reallege and incorporate by reference paragraphs 1, 2,

and 4 through 47 above as if specifically set out herein.

163.    Defendant Gulf Coast Autopsy Physicians, P.A. either intended

to inflict emotional distress on Plaintiffs by committing the acts described

below or knew or should have known that emotional distress was likely to result from these actions. The following conduct by Defendant Gulf Coast Autopsy was extreme and outrageous:

    a. Employees and/or agents failed to accurately identify the body of Deleigha Gibson as such;

    b. employees and/or agents failed to conduct any investigation into the identities of the two young women despite notation by body removal that the bodies were only "believed to be" Deleigha Gibson and "Jane Smith," despite the fact that she learned that her office did not have the body of "Jane Smith" but rather the body of Samara Cooks, and despite the DAVID report including a photo of Deleigha Gibson, who looked nothing like Samara Cooks, who was tagged as Deleigha;

    c. enacted and implemented policies which prevented the Plaintiffs from viewing the body of Deleigha Gibson, an action that, had it been allowed, would have ensured accurate identification of Deleigha Gibson's body;

    d. employees and/or agents failed to use Deleigha's unique markings or piercings—a cross tattoo on her wrist and a belly button piercing— to properly identify her body or verify her identity with Plaintiffs;

e.  employees and/or agents failed to ensure proper preservation of the body of Deleigha Gibson whose identification stated that she wished to be an organ donor;

f.  employees and/or agents failed to properly tag or label or identify the body of Deleigha Gibson;

g.  employees and/or agents released the body of Deleigha Gibson to Faith Chapel Funeral Home without authorization;

h.  employees and/or agents failed to take precautions to ensure proper identification of the body of Deleigha Gibson, treatment of the body in line with her direction to be an organ donor, and treatment of her body with dignity and respect, as required by Fla. Stat. § 497.386(4), and protection of Plaintiffs constitutionally protected rights in the body of their deceased daughter;

i.  failed to comply with their mission statement to "[t]reat bereaved families with respect, sensitivity and consideration" or to "[p]rovide families and loved ones of decedents with timely reports and explanations";

j.  failed to establish and/or implement policies and procedures to ensure proper identification of the deceased;

k. failed to establish and/or implement policies and procedures to ensure protection of surviving family members' rights with regard to the bodies of their deceased family member; and,

l. failed to liaise with any member of the Florida Highway Patrol to ensure proper identification.

164.     After Defendant Gulf Coast Autopsy committed the acts delineated in the preceding paragraph and as a direct and proximate result of its conduct, Plaintiffs suffered severe emotional distress such that no reasonable person could be expected to endure it.

165.     These outrageous actions by Defendant Gulf Coast Autopsy have directly and proximately caused actual, direct, incidental, consequential, and special damages to Plaintiffs including, but not limited to, nightmares and visions of their daughter's mutilated remains, loss of appetite, recurring night terrors, anxiety, stress, pain, suffering, and mental anguish.

## SEVENTEENTH CAUSE OF ACTION

### Breach of Contract by Defendant Tracy Morton Memorial Chapel, LLC

166.     Plaintiffs reallege and incorporate by reference paragraphs 1, 2, and 4 through 47 above as if specifically set out herein.

167.     Plaintiffs entered into a valid and binding Contract with Defendant Tracy Morton Memorial Chapel, LLC for the embalmment, visitation, and funeral services for Deleigha Gibson.

168.     Plaintiffs conformed their actions to meet the bounds of the agreement and performed under the terms of the contract.

169.     Defendant Tracy Morton received valuable consideration to perform the services outlined in the contract.

170.     The parties contemplated, by entering into the Contract, that Defendant Tracy Morton would perform embalming services and other preparation on the body of Deliegha Gibson.

171.     The parties contemplated that Defendant Tracy Morton would prepare the body in a manner that was satisfactory to the family of Deleigha Gibson.

172.     The parties contemplated that Defendant Tracy Morton would provide funeral services and treat the family of Deleigha Gibson with dignity and respect to honor Plaintiffs' daughter and her memory.

173.     Upon information and belief, Defendant Tracy Morton did not allow Plaintiffs to view the body of Deleigha Gibson after Plaintiff Tammy Gibson had requested to do so. Had Plaintiff Tammy Gibson been able to view the body, she would have discovered that it was not her daughter.

174.    Defendant Tracy Morton breached the terms of the Contract by failing to carry out the initial embalmment on the actual body of Deleigha Gibson, by failing to meet the standards agreed upon in the preparation of Deleigha Gibson's body, by failing to treat Deleigha Gibson's family with dignity and respect, and by desecrating Deliegha Gibson's body before her burial.

175.    Plaintiffs were damaged by not receiving the consideration under the Contract, namely the actual embalmment of their daughter, a proper preparation of her body, and dignified and respectful services for Plaintiffs.

176.    Despite Plaintiffs' performance, Defendant Tracy Morton refused to perform its consideration to provide services and breached its valid Contract with Plaintiffs.

## EIGHTEENTH CAUSE OF ACTION

**Respondeat Superior against Defendant Faith Chapel Funeral Services, LLC**

177.    Plaintiffs reallege and incorporate by reference paragraphs 1, 2, and 4 through 47 above as if specifically set out herein.

178.    At the time and place above described, and at all times relevant to actions forming the basis of this Complaint, employees and/or agents of Defendant Faith Chapel were acting within the line and scope of their employment and/or with the express authority of Defendant Faith Chapel.

179.     Plaintiffs aver that any recklessness or wantonness or outrageous behavior which may be attributable to employees and/or agents of Defendant Faith Chapel is imputable to Defendant Faith Chapel by virtue of the doctrine of respondeat superior in as much as these employees and/or agents, at the time and place described above, were acting in the furtherance and within the scope of its duties with Defendant Faith Chapel.

## NINETEENTH CAUSE OF ACTION

### Respondeat Superior against Defendant
### Tracy Morton Memorial Chapel, LLC

180.     Plaintiffs reallege and incorporate by reference paragraphs 1, 2, and 4 through 47 above as if specifically set out herein.

181.     At the time and place above described, and at all times relevant to actions forming the basis of this Complaint, employees and/or agents of Defendant Tracy Morton were acting within the line and scope of their employment and/or with the express authority of Defendant Tracy Morton.

182.     Plaintiffs aver that any recklessness or wantonness or outrageous behavior which may be attributable to employees and/or agents of Defendant Tracy Morton is imputable to Defendant Tracy Morton by virtue of the doctrine of respondeat superior in as much as these employees and/or agents, at the time and place described above, were acting in the furtherance and within the scope of its duties with Defendant Tracy Morton.

77

## TWENTIETH CAUSE OF ACTION

### Respondeat Superior against Defendant
### Gulf Coast Autopsy Physicians, P.A.

183.     Plaintiffs reallege and incorporate by reference paragraphs 1, 2, and 4 through 47 above as if specifically set out herein.

184.     At the time and place above described, and at all times relevant to actions forming the basis of this Complaint, employees and/or agents of Defendant Gulf Coast Autopsy were acting within the line and scope of their employment and/or with the express authority of Defendant Gulf Coast Autopsy.

185.     Plaintiffs aver that any recklessness or wantonness or outrageous behavior which may be attributable to employees and/or agents of Defendant Gulf Coast Autopsy is imputable to Defendant Gulf Coast Autopsy by virtue of the doctrine of respondeat superior in as much as these employees or agents, at the time and place described above, were acting in the furtherance and within the scope of its duties with Defendant Gulf Coast Autopsy. This Count is not intended to apply to the allegations against Defendant Gulf Coast Autopsy brought pursuant to 42 U.S.C. § 1983.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs demand judgment against the Defendants on each of the above-referenced claims and causes of action and as follows:

a.     A trial by jury as to all issues;

b. An award of compensatory damages to Plaintiffs for non-economic damages including but not limited to past and future pain, suffering, emotional distress, loss of enjoyment of life, and for any economic damages including but not limited to past and future medical expenses, out of pocket expenses, and other economic damages in an amount to be determined at trial of this action;

c. Pre-judgment interest;

d. Post-judgment interest;

e. An award of reasonable attorneys' fees;

f. The costs of these proceedings; and

g. Such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated:  March 8, 2021

RESPECTFULLY SUBMITTED,

**THE COCHRAN FIRM-DOTHAN, PC**

By: /s/ John J. Givens
John J. Givens
111 E. Main St.
Dothan, AL  36301
Phone: (334) 673-1555
Fax: (334) 699-7229
Email: johngivens@cochranfirm.com

Request Summons be issued for Personal Service to the following:

**Defendant Timothy J. Gallagher**
5203 Soundside Dr
Gulf Breeze, FL 32563-9314

**Defendant Gulf Coast Autopsy Physicians, P.A.**
**c/o Registered Agent, Andrea N. Minyard**
1067 8th St. Ste. # 101
Naples, FL 34102

**Defendant Chad Lynch**
150 Stumpfield Rd.
Pensacola, FL 32503

**Defendant Thomas Paschal**
150 Stumpfield Rd.
Pensacola, FL 32503

**Defendant Randle Padgett**
150 Stumpfield Rd.
Pensacola, FL 32503

**Also to be served with the Complaint are:**

1. Plaintiffs' First Requests for Admissions to Defendant Gulf Coast Autopsy Physicians, P.A.
2. Plaintiffs' First Requests for Admissions to Defendant Timothy J. Gallagher
3. Plaintiffs' First Requests for Admissions to Defendant Chad Lynch
4. Plaintiffs' First Requests for Admissions to Defendant Thomas Paschal
5. Plaintiffs' First Requests for Admissions to Defendant Randle Padgett
6. Plaintiffs' First Requests for Production of Documents to Defendant Gulf Coast Autopsy Physicians, P.A.
7. Plaintiffs' First Requests for Production of Documents to Defendant Timothy J. Gallagher
8. Plaintiffs' First Requests for Production of Documents to Defendant Chad Lynch
9. Plaintiffs' First Requests for Production of Documents to Defendant Thomas Paschal
10. Plaintiffs' First Requests for Production of Documents to Defendant Randle Padgett
11. Plaintiffs' First Interrogatories to Defendant Gulf Coast Autopsy Physicians, P.A.
12. Plaintiffs' First Interrogatories to Defendant Timothy J. Gallagher
13. Plaintiffs' First Interrogatories to Defendant Chad Lynch
14. Plaintiffs' First Interrogatories to Defendant Thomas Paschal
15. Plaintiffs' First Interrogatories Defendant Randle Padgett