## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

**DEMETRIUS GIBSON and**
**TAMMY GIBSON,**

      **Plaintiffs,**               **CASE NO.: 3:21-cv-00774-MCR-EMT**

**vs.**

**ANDREA MINYARD; GULF COAST**
**AUTOPSY PHYSICIANS, P.A.; TIMOTHY**
**J. GALLAGHER; CORPORAL THOMAS**
**PASCHAL; TROOPER CHAD LYNCH;**
**SERGEANT RANDLE PADGETT; FAITH**
**CHAPEL FUNERAL SERVICES, LLC; and**
**TRACY MORTON MEMORIAL CHAPEL, LLC,**

      **Defendants.**

_____/

## DEFENDANTS PASCHAL, LYNCH, AND PADGETT'S
## MOTION TO DISMISS PLAINTIFFS'
## FIRST AMENDED COMPLAINT [ECF No. 1-1]  WITH PREJUDICE

Defendants CORPORAL THOMAS PASCHAL, TROOPER CHAD

LYNCH, and SERGEANT RANDLE PADGETT, by and through undersigned

counsel, pursuant to Rules 8(a)(2) and 12(b)(6), Federal Rules of Civil Procedure,

and submit this motion to dismiss Plaintiffs DEMETRIUS AND TAMMY

GIBSON'S first amended complaint [ECF No. 1-1], with prejudice, for failing to

allege facts giving rise to plausible entitlement to relief and failing to state a claim

upon which relief can be granted, and pursuant to the principles of qualified

immunity and statutory immunity.

## PROCEDURAL BACKGROUND

Samara Cooks, 15, and Deleigha Gibson, 18, died on July 29, 2019, following a car crash in Escambia County. On March 5, 2020, the parents of Ms. Cooks and Ms. Gibson filed separate lawsuits in the First Judicial Circuit in and for Escambia County, Florida. The lawsuits were filed against the Florida Highway Patrol ("FHP") and one of its employees (Captain Richard Warden), the medical examiner's office and one of its employees (Andrea Minyard), and the two funeral homes who were responsible for preparing the bodies of the deceased for funeral and burial. The plaintiffs in these lawsuits alleged that the bodies of the deceased were misidentified, with Ms. Gibson being identified as Ms. Cooks, and Ms. Cooks being identified as Ms. Gibson.

Ms. Gibson's parents filed an amended complaint in state court that was deemed filed on March 25, 2021. In their amended complaint, Ms. Gibson's parents dropped the FHP and Captain Warden, but added three new FHP employees – Trooper Chad Lynch, Cpl. Thomas Paschal, and Sgt. Randle Padgett – each sued in their individual capacities (hereinafter, "FHP Defendants"). The FHP Defendants timely removed this matter to federal court.

Ms. Cooks' mother also filed an amended complaint in state court that was deemed filed on April 27, 2021. The defendants, factual allegations, and claims in

2

the *Cooks* amended complaint are nearly identical to those presented in the *Gibson* amended complaint – except they concern Ms. Cooks instead of Ms. Gibson. See *Cooks v. Minyard, et al.,* Case No. 3:21-cv-00776-MCR-EMT. The FHP Defendants also timely removed the *Cooks* amended complaint to federal court.

On May 19, 2021, these Defendants filed a Notice of Similar Case in this case [ECF No. 7] and in the *Cooks* case [*Cooks v. Minyard, et al*., Case No. 3:21-cv-00776-MCR-EMT, ECF No. 7]. The FHP Defendants intend to file a motion to dismiss in the *Cooks* case that will largely restate the arguments herein.

## **FACTUAL BACKGROUND**[1]

Plaintiffs Demtrius and Tammy Gibson ("Plaintiffs") are the parents of Deligha Gibson ("Ms. Gibson"). Plaintiffs' Amended Complaint, ECF No. 1-1 (hereinafter "complaint"), ¶¶ 5-6. On or about July 29, 2019, Ms. Gibson passed away as a result of a motor vehicle crash in unincorporated Escambia County, Florida. Complaint, ¶ 15. Another victim, Samara Cooks ("Ms. Cooks") passed away in that same crash. Complaint, ¶ 16.

Several employees of the FHP arrived at the scene to investigate the crash – including Trooper Lynch. Complaint, ¶¶ 19-20. Employees of the FHP attempted to positively identify the deceased victims. Complaint, ¶¶ 19-24. Trooper Lynch and

---

[1] For purposes of this motion, Plaintiffs' factual allegations are accepted as true and should be construed in the light most favorable to Plaintiffs. *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008).

other unnamed employees of the FHP had "some discussion" wherein they "question[ed] the identities of the two victims of the crash." Complaint, ¶ 23.

A body removal service[2] was called to the scene to take the victims' bodies to the medical examiner's office. Complaint, ¶¶ 8, 21, 27. Plaintiffs allege that Trooper Lynch handed body removal service personnel printed reports that purported to identify the two victims. Complaint, ¶ 24. However, it is undisputed that Trooper Lynch never positively identified either victim. Complaint, ¶¶ 22-25. To the contrary, according to Plaintiffs' complaint, the bodies were allegedly "tagged and marked" by one or more unnamed individuals. Complaint, ¶ 25.

Prior to the medical examiner's office obtaining control of the bodies, the body removal service notated that the bodies were only "believed to be" Ms. Gibson and another young lady (referred to in the Complaint as "Jane Smith"). Complaint, ¶¶ 20, 24, 25, 27, 51, 68, 84. The medical examiner was later informed that there was no "Jane Smith" involved in the crash. Complaint, ¶ 31. The medical examiner crossed out the name "Jane Smith" on his paperwork, and marked the body as Samara Cooks. Complaint, ¶ 31. The medical examiner then continued with the autopsies without properly identifying the bodies. Complaint, ¶¶ 31, 35.

Later, Plaintiffs authorized the release of Ms. Gibson's body to Defendant

---

[2] The body removal service is not listed as a defendant to this action, or identified in the complaint.

Tracy Morton Memorial Chapel. Complaint, ¶ 36. However, the medical examiner released Ms. Gibson's body (incorrectly identified as Ms. Cooks) to Defendant Faith Chapel Funeral Services. Complaint, ¶ 37.[3]

It was later determined that the body originally marked "Jane Smith" and later marked as Ms. Cooks was actually Ms. Gibson, and the body originally marked as Ms. Gibson was actually Ms. Cooks. Complaint, ¶ 31.

Plaintiffs also allege, upon information and belief, that Sgt. Padgett and Cpl. Paschal attempted to switch the bodies back. Complaint, ¶ 45.[4]

## MEMORANDUM OF LAW

Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."[5] When ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The court must

---

[3] For purposes of providing context only, Plaintiff in the *Cooks* case alleges that the medical examiner improperly released Ms. Cooks' body (incorrectly identified as Ms. Gibson) to Defendant Tracy Morton Memorial Chapel. Case No. 3:21-cv-00776-MCR-EMT, ECF No. 1-1, ¶ 34.

[4] While Defendants acknowledge that, for purposes of a motion to dismiss, they must accept of Plaintiffs' allegations as true, Defendants take issue with the allegation in paragraph 44, which wholly lacks evidentiary support. Notably, Plaintiff in the *Cooks* case does not make this allegation.

[5] Federal pleading requirements apply to cases that have been removed to federal court. *See, e.g., Lynch v. Jackson*, 478 Fed.Appx. 613, 616 (11th Cir. 2012).

accept the complaint's allegations as true "even if [the allegations are] doubtful in fact." *Id*. at 555.

A complaint must include more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. A complaint must include "allegations plausibly suggesting (not merely consistent with)" the plaintiff's entitlement to relief. *Id*. at 557. The complaint must set forth facts – not mere labels or conclusions – that "render plaintiffs' entitlement to relief plausible." *Id*. at 569 n.14.

A district court thus should grant a motion to dismiss unless "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, are insufficient. *Id*. The court is not required to accept as true any conclusory allegation "upon information and belief" that is unaccompanied by enough facts to make that statement plausible. *Mann v. Palmer*, 713 F.3d 1306, 1315 (11th Cir. 2013) (*citing Twombly*, 550 U.S. at 557).

Determining whether a complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted turns on whether Plaintiffs have alleged sufficient plausible facts to support their claim. *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 570) ("To survive a

motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## <u>COUNT IV</u>
### 42 U.S.C. § 1983 Against Defendant Chad Lynch

Plaintiffs allege that Trooper Lynch "participated in the identification, tagging or otherwise marking, handling, and movement of the body of Deleigha Gibson," and, "[u]pon information and belief … misidentified the body of Deleigha Gibson as 'Jane Smith' by handing the body removal service the DAVID report of 'Jane Smith' when they removed her body from the scene of the crash." Complaint, ¶¶ 100-101. Plaintiffs allege that Trooper Lynch's alleged actions violate their constitutional rights secured by the Fourteenth Amendment to the United States Constitution and Article 1, § 2 and § 9 of the Constitution of the State of Florida.

Plaintiffs do not specify which right under the Fourteenth Amendment to the United States Constitution these movants allegedly violated. Based on the remainder of Plaintiffs' complaint, it appears Plaintiffs are alleging Trooper Lynch violated their procedural due process rights under the Fourteenth Amendment. Inasmuch as no other Fourteenth Amendment rights could conceivably be implicated in this case, movants proceed in this Motion with the presumption that Plaintiffs intend to bring

7

a procedural due process claim.

There is no basis for Plaintiffs' claims regarding alleged violations of the Constitution of the State of Florida. Section 1983 does not create a remedy for every wrong committed under the color of state law, but only for those that deprive a plaintiff of a *federal* right. *See Paul v. Davis*, 424 U.S. 693, 698-99 (1976). Moreover, it is well-established that "Florida constitutional claims do not support claims for damages absent a separate enabling statute." *See, e.g., Holcy v. Flagler Cnty. Sheriff*, 2007 WL 2669219, at *6 (M.D. Fla. 2007) (*citing Garcia v. Reyes*, 697 So. 2d 549 (Fla. 4th DCA 1997)); *see also Youngblood v. Fla. Dep't of Health*, 224 Fed. Appx. 909, 913 (11th Cir. 2007). Plaintiffs cannot bring a claim against these Defendants for alleged violations of the Constitution of the State of Florida.

Plaintiffs also makes passing reference to an alleged violation of section 497.386(4), Florida Statutes, which provides that "The [Board of Funeral, Cemetery, and Consumer Services][6] shall establish by rule the minimal standards of acceptable and prevailing practices for the handling and storing of dead human bodies, provided that all human remains transported or stored must be completely covered and at all times treated with dignity and respect." This statute provides the Board of Funeral, Cemetery, and Consumer Services the authority to promulgate rules that would

---

[6] The Board of Funeral, Cemetery, and Consumer Services is a division of the Florida Department of Financial Services. § 497.101(1), Fla. Stat.

8

apply to funeral directors and cemeteries. Neither the statute nor any rules promulgated pursuant to the statute have any application to law enforcement officers investigating a car crash. Moreover, Plaintiffs have not alleged, and will be unable to establish, that any alleged violation of the state statute (or rule promulgated pursuant to the statute) would constitute a violation of a right secured by the U.S. Constitution.

To prevail on a section 1983 claim, a plaintiff must show that "(1) the defendant deprived her of a right secured under the Constitution or federal law and (2) that such a deprivation occurred under color of state law." *Arrington v. Cobb Cnty.*, 139 F.3d 865, 872 (11th Cir. 1998). Presuming for purposes of this motion that Plaintiffs in fact have a "property right, quasi-property right, or legitimate claim of entitlement … to access the body of their deceased daughter, Deleigha Gibson,"[7] Plaintiffs have not alleged, and will be unable to establish, that Trooper Lynch deprived them of that right in the first instance, or that he deprived them of that right without due process of law.

Trooper Lynch never deprived Plaintiffs access to the body of their deceased daughter. Trooper Lynch only investigated the scene of the crash a short time before the body removal service transported the deceased victims (including Plaintiffs'

---

[7] In *Crocker v. Pleasant*, 778 So. 2d 978, 988 (Fla.2001), the Florida Supreme Court recognized a "legitimate claim of entitlement" that the next of kin have in their dead relatives' bodies.

9

daughter) to the medical examiner's office. Plaintiffs do not allege, and will be unable to establish, that they were ever at the at the scene of the crash at the same time as Trooper Lynch. Plaintiffs cannot establish that any action of Trooper Lynch deprived them of access to their daughter.

Further, Plaintiffs have not identified what "process" was allegedly "due," or what Trooper Lynch could have done to ensure that Plaintiffs were provided "due process." Again, Trooper Lynch was only involved in investigation for short period of time between the time he arrived at the scene and the body removal service transported the unidentified bodies to the medical examiner's office. At most, unnamed individuals incorrectly tagged the bodies of the two crash victims "within the view" of Trooper Lynch. Complaint, ¶ 25. Plaintiffs have not alleged, and will be unable to establish, that due process required Trooper Lynch (or anyone on the scene) to positively identify each victim before clearing the scene and opening the road to resumed vehicular traffic.

Plaintiffs do not specifically allege that Trooper Lynch acted negligently. Nor could they, inasmuch as Trooper Lynch owed no duty to these Plaintiffs (or their decedent). Nonetheless, the entirety of Plaintiffs' section 1983 claim against Trooper Lynch clearly *sounds* in negligence, and, as such, fails as a matter of law.

It is axiomatic that a negligent act that causes unintended injury to a person's property does not "deprive" that person of property within the meaning of the Due

Process Clause. *See Daniels v. Williams*, 474 U.S. 327, 328 (1986). "To hold that injury caused by such conduct is a deprivation within the meaning of the Fourteenth Amendment would trivialize the centuries-old principle of due process of law." *Id.*, at 332; *see also Crocker*, 778 So. 2d at 988-989 ("…only 'deprivations' of constitutional rights are covered by section 1983 and deprivations that are merely negligent are not sufficient to constitute 'deprivations' under section 1983.")

Moreover, the facts alleged in Plaintiffs' complaint defeat causation. To prevail on their section 1983 claim against him, Plaintiffs must show that Trooper Lynch's actions *actually and proximately caused* a deprivation of their procedural due process rights. *See Jackson v. Sauls*, 206 F.3d 1156, 1168 (11th Cir. 2000) (a plaintiff asserting a section 1983 "constitutional tort" claim must meet the same standard of causation required in a common law tort claim); *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982) (section 1983 "plainly requires proof of an affirmative causal connection between the actions taken by a particular person 'under color of state law' and the constitutional deprivation"). Here, Plaintiffs allege that the bodies of the crash victims left the scene and arrived at the medical examiner's office with only the minimal amount of certainty as to their identification – merely that they were "believed to be" Ms. Gibson and "Jane Smith." Additionally, the medical examiner's office was later informed that "Jane Smith" was not involved in the collision at all. To the extent Plaintiffs were temporarily denied possession of

their decedent's body, it cannot be said that such deprivation was actually or proximately caused by Trooper Lynch's alleged actions at the scene of the crash.

Plaintiffs have failed to state a section 1983 claim against Trooper Lynch. Based on the allegations of Plaintiffs' complaint, it is clear they will never be able to state a claim against Trooper Lynch. Plaintiffs' complaint against Trooper Lynch should be dismissed, with prejudice.

**COUNT V**
**42 U.S.C. § 1983 Against Defendant Thomas Paschal**

**COUNT VI**
**42 U.S.C. § 1983 Against Defendant Randle Padgett**

Plaintiffs have failed to state a claim against Cpl. Pascal or Sgt. Padgett under section 1983. Because there was no underlying constitutional violation (see above), there can be no supervisory liability against Cpl. Pascal or Sgt. Padgett. Even if there was an underlying constitutional violation, Plaintiffs' complaint fails to state a claim for supervisory liability under the applicable standards. For this reason, Plaintiffs' section 1983 claims against Cpl. Pascal and Sgt. Padgett should be dismissed.

The statement of facts in Plaintiffs' complaint contains four paragraphs containing allegations related to Cpl. Paschal and Sgt. Padgett. None of the paragraphs allege or even suggest that either one of them personally participated in any constitutional violation. In fact, each paragraph address "Defendant Paschal and Defendant Padgett" as though the two of them operate in lockstep with each other.

12

As it relates to Cpl. Paschal and Sgt. Padgett, Plaintiffs allege:

- they knew of an error in the FHP's Traffic Crash Report, and did not correct it; (Complaint, ¶ 26)

- they were responsible for the conduct of FHP employees, and for developing and enforcing policies; (Complaint, ¶¶ 29, 34) and

- they attempted to switch the bodies. (Complaint, ¶ 44)

It is well-established that a supervisor cannot be held liable under section 1983 under respondeat superior or vicarious liability. *Danley v. Allen*, 540 F.3d 1298, 1314 (11th Cir. 2008), *abrogated on other grounds as recognized in Randall v. Scott*, 610 F.3d 701, 709 (11th Cir. 2010). For supervisory liability, the supervisor must personally participate in the alleged constitutional violation, or there must be a causal connection between the supervising official's actions and the constitutional deprivation. *Id*. A plaintiff may show a causal connection by showing either: a history of widespread abuse that would put a reasonable supervisor on notice of the need to correct the alleged deprivation; facts to support an inference that the supervisor directed subordinates to act unlawfully or knew they would and failed to stop them; or that the supervisor's custom or policy resulted in deliberate indifference to constitutional rights. *Id*.

Plaintiffs' allegations related to Cpl. Paschal and Sgt. Padgett being responsible for supervising FHP employee, or developing and enforcing policies,

fall well short of the minimum requirements to establish supervisory liability for a claim brought pursuant to section 1983. Plaintiffs' allegation that Cpl. Paschal and Sgt. Padgett "attempted to switch the bodies," even if true, fails to state a claim under any known cause of action.

Plaintiffs' section 1983 claims against Cpl. Paschal and Sgt. Padgett fail to state a claim upon which relief can be granted, and should be dismissed, with prejudice.

## FHP Defendants Enjoy Qualified Immunity from Plaintiffs' Federal Claims

All three FHP Defendants enjoy qualified immunity from Plaintiffs' section 1983 claims. Qualified immunity allows government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002).

Qualified immunity is an immunity from suit rather than a mere defense to liability. *Pearson v. Callahan*, 555 U.S. 223, 237 (2009) (*citing Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). Generally, courts are urged to apply the affirmative defense of qualified immunity at the earliest possible stage in litigation – including on a motion to dismiss. *See Andrade v. Miami Dade Cty.*, No. 09-23220-CIV, 2010 WL 4069128, at *4 (S.D. Fla. Sept. 30, 2010)

To receive qualified immunity, the defendant public official must prove as a

14

threshold matter that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. *Courson v. McMillan*, 939 F.2d 1479 (11th Cir. 1991) (*quoting Rich v. Dollar*, 841 F.2d 1558, 1563–64 (11th Cir. 1988)). Once this is established, the burden shifts to the plaintiff. *Id*.

A public official is acting within the scope of his discretionary authority if the official was performing a legitimate job-related function through means that were within his power to utilize. *See, e.g., Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265-66 (11th Cir. 2004). Here, it cannot be disputed that these Defendants were engaged in a discretionary function when they investigated the subject crash. Accordingly, Plaintiffs shoulder the burden of proving that these Defendants do not enjoy qualified immunity protection.

The court then engages in a two-step inquiry. *Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008). The first question is whether, taken in the light most favorable to the plaintiff, the facts alleged show that the defendant's conduct violated a constitutional or statutory right. *Id*. If so, the second question is whether the right, be it constitutional or statutory, was clearly established. *Id*. To demonstrate that a right is "clearly established," a plaintiff may point to a "materially similar case," identify a "broader, clearly established principle," or show that "the conduct at issue so obviously violated the Constitution that prior case law is unnecessary." *J W by & through Tammy Williams v. Birmingham Bd. of Educ.*, 904 F.3d 1248, 1259-60 (11th

Cir. 2018) (citation and internal quotation marks omitted); *see also Maddox v. Stephens*, 727 F.3d 1109, 1121 (11th Cir. 2013).

> For a right to be clearly established to defeat qualified immunity,

> the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (internal citations omitted).

A materially similar case "need not be directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *J W by & through Tammy Williams*, 904 F.3d at 1259 (citation and internal quotation marks omitted). "A single case does not establish the law in a sufficiently concrete context so as to defeat the qualified immunity defense." *Blanco v. City of Clearwater, Fla.*, 9 F. Supp. 2d 1316, 1319 (M.D. Fla. 1998).

In considering whether a violation is "clearly established," relevant law "consists of holdings of the Supreme Court, the Eleventh Circuit, or the highest court of the relevant state." *Sebastian v. Ortiz*, 918 F.3d 1301, 1307 (11th Cir. 2019).

Here, as discussed in more detail above, the FHP Defendants' conduct did not violate a constitutional or statutory right. Accordingly, under the first question, these Defendants enjoy qualified immunity from suit.

The FHP Defendants are entitled to qualified immunity under the second

question, as well. Plaintiffs have not cited, and the undersigned has been unable to locate, even a single case that would suggest that failure to ensure the correct identification of car crash victims violates any constitutional or statutory right. Accordingly, it cannot be said that the FHP Defendants' alleged actions violated clearly established federal statutory or constitutional rights of which a reasonable person would have known. *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010).

Plaintiffs' section 1983 claims against the FHP Defendants are without basis. Moreover, the FHP Defendants enjoy qualified immunity from suit based on their involvement in this matter. For these reasons, Plaintiffs' section 1983 claims against these Defendants should be dismissed, with prejudice.

## COUNT XI
### "Tort of Outrage" Against Defendant Chad Lynch

## COUNT XII
### "Tort of Outrage" Against Defendant Thomas Paschal

## COUNT XIII
### "Tort of Outrage" Against Defendant Randle Padgett

Defendants' alleged actions, even if true, wholly fail to support a claim for "tort of outrage" under applicable law. Counts XI-XII of Plaintiffs' complaint should be dismissed, with prejudice.

The independent "tort of outrage" has been recognized in Florida, where it is more commonly called "intentional infliction of emotional distress." *Armstrong v.*

*H&C Communications, Inc.*, 575 So. 2d 280, 281 (*citing Metropolitan Life Ins. Co.*

*v. McCarson*, 467 So. 2d 277, 278 (Fla. 1985) ("...Florida recognizes the tort of

intentional infliction of emotional distress.")

    To state a cause of action for intentional infliction of emotional distress, the

plaintiff must demonstrate that: 1) the defendant acted recklessly or intentionally; 2)

the defendant's conduct was extreme and outrageous; 3) the defendant's conduct

caused the plaintiff's emotional distress; and 4) plaintiff's emotional distress was

severe. *Johnson v. Thigpen*, 788 So. 2d 410, 412 (Fla. 1st DCA 2001) (*citing*

*Urquiola v. Linen Supermarket, Inc.*, 1995 WL 266582 (M.D.Fla.1995).

    In *McCarson*, the Florida Supreme Court adopted the language found in

section 46 of the Restatement (Second) of Torts (1965):

> (d) Extreme and Outrageous Conduct. ..... It has not been enough that
> the defendant has acted with an intent which is tortious or even
> criminal, or that he has intended to inflict emotional distress, or even
> that his conduct has been characterized by "malice," or a degree of
> aggravation which would entitle the plaintiff to punitive damages for
> another tort. Liability has been found only where the conduct has been
> so outrageous in character, and so extreme in degree, as to go beyond
> all possible bounds of decency, and to be regarded as atrocious, and
> utterly intolerable in a civilized community. Generally, the case is one
> in which the recitation of the facts to an average member of the
> community would arouse his resentment against the actor, and lead him
> to exclaim, "Outrageous!"

*McCarson*, 467 So. 2d at 288.

    None of the FHP Defendants' alleged actions reach the level of outrageous

conduct contemplated under *McCarson*. None of their actions alleged by Plaintiffs

were intentional or malicious. Moreover, none of their actions, if true, would cause an average member of the community to exclaim, "Outrageous!" or otherwise resent these Defendants.

As discussed in greater detail above, at worst, Trooper Lynch attempted to identify the victims of the subject crash, but was unable to do so before they were removed from the scene by the body removal service. As a result, the bodies of the victims were transported to the medical examiner's office with only "believed-to-be" level of certainty as to their identifications. This would not lead anyone in the community to exclaim, "Outrageous!" Not even close.

Plaintiffs' "tort of outrage" claims against Cpl. Paschal and Sgt. Padgett fare no better. Corporal Paschal and Sgt. Padgett are alleged to have supervised other employees of the Florida Highway Patrol, and were purportedly responsible for implementing a number of policies. Again, at worst, these policies purportedly resulted in the bodies of these victims not being correctly identified by FHP employees. Certainly not the type of intentional behavior necessary to support this cause of action. And the alleged failed *attempt* to switch the bodies back (which, again, is flatly denied) is insufficient to support this claim.

Plaintiffs suggest that the Florida Traffic Crash Report contains incorrect information (namely, that Ms. Gibson was thrown from the crashed vehicle), which has allegedly caused Plaintiffs extreme stress and anxiety. Complaint, ¶¶ 26,

143c,147c, 151a. Notably, Plaintiffs do not allege, and will be unable to establish, that these Defendants (or any employee of the FHP) has a duty to "correct" a Traffic Crash Report. More importantly, Plaintiffs do not allege, and will be unable to establish, that any employee of the FHP has the *authority* or *ability* to "correct" a Traffic Crash Report after it has been submitted and approved, or that the correct body placement was not included in the final Traffic Homicide Report. The alleged incorrect information on the Traffic Crash Report is a non-issue. In any event, any alleged failure to correct the incorrect information is not "Outrageous!"

Additionally, Plaintiffs' "tort of outrage" claims fail for lack of causation. It is undisputed that the bodies of the victims arrived at the medical examiner's office with only a "believed-to-be" identification. Accordingly, it cannot be said that the failure to these Defendants to identify the victims at the scene (or, to put into place policies related to identification at the scene) was the actual or proximate cause of any purported injuries that stemmed from the handling of the bodies after they left the scene. Similarly, the alleged failed attempt to switch the bodies back could not have caused emotional distress.

## FHP Defendants Enjoy Statutory Immunity from Plaintiffs' State Claims

These Defendants enjoy statutory immunity from Plaintiffs' state law "tort of outrage" claim against them. Section 768.28(9)(a), Florida Statutes, immunizes state officers, employees, and agents from lawsuits arising from "act[s], event[s], or

omission[s] of action in the scope of [their] employment or functions." *See Eiras v. Florida*, 239 F.Supp.3d 1331, 1343 (M.D. Fla. 2017). "The immunity may be pierced only if state agents either act outside the scope of their employment, or act 'in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.'" *Id*. (quoting § 768.28(9)(a), Fla. Stat.); *see also Peterson v. Pollack*, 290 So. 3d 102, 109–10 (Fla. 4th DCA 2020) (defining "bad faith," "with malicious purpose," and "in a manner exhibiting wanton and willful disregard of human rights [or] safety").

Plaintiffs do not allege, and will be unable to establish, that the FHP Defendants acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. Accordingly, these Defendants are immune from suit pursuant to section 768.28(9)(a), Florida Statutes.

WHEREFORE, Defendants Paschal, Lynch, and Padgett respectfully request this Court to issue an order dismissing, with prejudice, all of Plaintiffs' claims against them in the Amended Complaint, and granting any other relief deemed just and appropriate.

Respectfully submitted, this 24th day of May 2021.

/s/ *Elmer C. Ignacio*
**ELMER C. IGNACIO**
Florida Bar Number: 537683
eignacio@sniffenlaw.com
**MATTHEW J. CARSON**
Florida Bar Number: 0827711
mcarson@sniffenlaw.com
**VICKIE A. GESELLSCHAP**
Florida Bar Number: 502456
vgesellschap@sniffenlaw.com

**SNIFFEN & SPELLMAN, P.A.**
123 North Monroe Street
Tallahassee, Florida 32301
Telephone: (850) 205-1996
Facsimile: (850) 205-3004

700 South Palafox Street Suite 95
Telephone: (850) 741-2510
Facsimile: (850) 857-8700

*Attorneys for Defendant Paschal, Lynch, and Padgett*

## CERTIFICATION OF WORD COUNT

The undersigned certifies on this 24th day of May 2021 that this document complies with word limits set forth in Rule 7.1(F), N.D. Fla. Loc. R., and contains 4,827 words which includes the headings, footnotes, and quotations, but does not include the case style, signature block or Certificates of Word Count and Service.

/s/ *Elmer C. Ignacio*
**ELMER C. IGNACIO**

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via electronic mail and electronically through the court's CM/ECF system to counsel of record on this 24th day of May 2021.

*/s/ Elmer C. Ignacio*
**ELMER C. IGNACIO**
